**Alva M. HALL, Appellant,**

**v.**

**Patricia R. HARRIS, Secretary of Health and Human Services, Appellee.**

**No. 80–1739.**

United States Court of Appeals, Fourth Circuit.

Argued April 8, 1981.

Decided Sept. 4, 1981.

C. Frank Goldsmith, Jr., Marion, N. C., for appellant.

Max O. Cogburn, Jr., Asst. U. S. Atty., Asheville, N. C. (Harold M. Edwards, U. S. Atty., Asheville, N. C., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, and PHILLIPS and SPROUSE, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

Alva M. Hall appeals from a judgment of the U.S. District Court for the Western District of North Carolina, which affirmed a final decision of the Secretary of Health and Human Services denying Hall's application for social security disability insurance benefits. Concluding that the administrative record upon which the Secretary's decision was based is deficient in several critical areas, we vacate the judgment and remand for further proceedings.

I

Mrs. Hall filed an application in September 1978 for disability insurance benefits under Title II of the Social Security Act. Her claim was denied initially and on reconsideration by the Social Security Administration. Hall then requested a hearing before an administrative law judge (ALJ), which was held in May 1979.

At the hearing, Mrs. Hall testified that she had eight years of education and had last worked in September 1977, that her husband was employed, and that they had no dependent children. She described her past work experience. From 1974 to September 1977, she worked for Baxter Laboratories making a liquid medium and putting it in test tubes for later use in testing an intravenous solution. This job involved sitting, standing, walking, and lifting 25–30 pound packs of tubes. From 1971 to 1974, she worked as a furniture preassembler with Marimont Furniture using an automatic nailing machine and lifting pieces weighing 10–15 pounds each; from 1966 to 1971 she worked as a cabinet preassembler with Drexel Furniture Company and lifted tabletops weighing about 25 pounds each; and from 1958–1966, she worked for Washington Mills inspecting cut garment pieces and packing and loading them into trucks to be sent to the sewing room. These latter three jobs required Mrs. Hall to stand throughout the day. Finally, she worked for three months as a yarn winder at Cross Cotton Mill, a job which involved bending and lifting 7- to 18-pound tubes. Mrs. Hall also attempted to learn crocheting at a technical school in 1978, but dropped the course because she could not sit through the class and could not use her arms to that extent. She stated that she knew of no jobs that she could perform.

Mrs. Hall testified that she could not bend over and reach past her knees, remain in one position for long periods of time, raise her arms more than halfway, lift large pots, walk farther at one time than two doors down the street, walk up an incline or steps without help, or garden. Finally, she testified that she could do only limited housework—for example, that it took her about a half hour to make the bed because she had difficulty pulling the covers, and that her husband did the shopping and helped her to dress.

Mr. Hall corroborated his wife's testimony. Letters from neighbors and friends also supported Mrs. Hall's allegations of limited physical capacities.

Medical records in evidence showed that since 1977, Mrs. Hall has been in the hospital frequently. Dr. David Cappiello, her treating orthopedic surgeon, first hospitalized Mrs. Hall from November 10 to December 3, 1977, for work-up and treatment because of her history of severe back and right leg pain. At that time, she underwent a lumbar myelogram, which indicated a defect on the right at the level of L4–5. This finding indicated a possible herniated disc. After conservative treatment with

bed rest, analgesics, muscle relaxants, hydrocullator packs, and traction, Mrs. Hall was found practically asymptomatic and discharged. She was rehospitalized from January 24 to February 11, 1978 for low back pain of unknown etiology. An epidural venogram and another lumbar myelogram indicated a left-sided herniation. A consulting physician, Dr. Durham, however, thought Mrs. Hall might have a herniated nucleus pulposus. She was treated as before and also with an epidural block. Upon discharge, Mrs. Hall was not appreciably improved.

Based on the diagnosis of a herniated nucleus pulposus and the failure of conservative treatment, Mrs. Hall was again hospitalized from March 30 to April 8, 1978. This time she underwent surgery consisting of a hemilaminectomy, L4–5, right, and excision of the L4–5 disc. On April 29, 1979, Mrs. Hall was readmitted for acute lumbar strain and received conservative treatment. When discharged on May 20, 1979, Mrs. Hall was minimally symptomatic. Dr. Cappiello suggested that she return to work if her employer had any light work that she could do. When Dr. Cappiello last saw Mrs. Hall on September 13, 1978, she had been unable to work because Baxter Laboratories had no light work. Dr. Cappiello was insistent that Mrs. Hall should not lift heavy objects at that time. Mrs. Hall also testified that in late 1978 or early 1979, Dr. Cappiello stopped her from doing even housework. No medical reports, however, were introduced to support this assertion.

Mrs. Hall also was admitted to the hospital in 1978–79 for other problems not asserted in support of her disability claim. From June 2 to July 4, 1978, she was hospitalized by Dr. Yates Palmer, a general surgeon, and underwent a total abdominal hysterectomy, a left salpingo-oophorectomy, an appendectomy, and repair of cystocele and rectocele. She was discharged as improved. Three days later Mrs. Hall was rehospitalized for gastritis and traumatic arthritis of the right knee from an injury. She was discharged on July 16, 1978, as improved.

Based on these medical records, a physician for the state agency made a physical capacities evaluation of Mrs. Hall on October 16, 1978, that was made part of the record. He never examined Mrs. Hall, but concluded that she could lift 50 pounds occasionally and 25 pounds frequently, could stand and walk 6 or more hours during a normal work day, could sit and work 6 out of 8 hours, and had the capacity to perform the following functions frequently: pushing and pulling movements, climbing stairs or ladders, gross manipulation (grasping, twisting, and handling), fine manipulation, bending and/or stooping, and reaching. This report indicated that Mrs. Hall could do medium work as defined in the Social Security Administration regulations. 20 C.F.R. § 404.1510(d) (1980).

Mrs. Hall also underwent sinus surgery in November 1978 and April 1979. At the time of the hearing, she was taking muscle relaxants and nerve pills prescribed by Dr. Cappiello, hormones and vitamins prescribed by Dr. Palmer, and pain pills (Fiorinol) prescribed by the family physician.

The ALJ gave Mrs. Hall an extension of time to submit additional reports from Dr. Cappiello. When she was unable to contact him, Mrs. Hall saw another orthopedic surgeon, Dr. Larry Anderson. Dr. Anderson completed a physical capacities evaluation of Mrs. Hall and found that she could lift 10 pounds or less frequently; could stand and walk only 2 hours during a normal work day; could not sit and work 6 out of 8 hours; could only occasionally make pushing, pulling, grasping, twisting, handling, and reaching movements; and could neither climb stairs or ladders nor bend and/or stoop. Dr. Anderson concluded that Mrs. Hall was relatively disabled and doubted that she could do work requiring substantial lifting, prolonged standing, or bending.

Based on the above evidence, the ALJ found Mrs. Hall met the Social Security Act's special earnings requirements, but that she was not totally disabled. The ALJ first found that Mrs. Hall was not then working and that the medical evidence did not indicate that she was suffering from a

"listed impairment" or the medical equivalent, so that she was not automatically deemed disabled under the regulations. *Id.* §§ 404.1503(d), .1504(a)(2), .1516(b), .1517, App. 1. The ALJ then found that Mrs. Hall was unable to do work involving substantial lifting, prolonged standing, or bending and, therefore, could not perform her past relevant work; that she had the residual functional capacity for at least sedentary work, *id.* § 404.1510(b); was a younger individual who can easily adapt to new work situations; and was semi-skilled with transferable skills. Consequently, he applied 20 C.F.R. § 404.1513 and App. 2, Table No. 1, Rule 201.20, which directed the conclusion that Mrs. Hall was not disabled.

The Appeals Council denied Mrs. Hall's request for review and the ALJ's decision became the Secretary's final determination. Mrs. Hall then brought this action for judicial review. 42 U.S.C. § 405(g). Acting on cross-motions for judgment on the pleadings and on Mrs. Hall's alternative motion for summary judgment, the district court affirmed the Secretary's decision as supported by substantial evidence. The district court noted that upon discharge after her back surgery and treatment, Mrs. Hall was minimally symptomatic and that there was neither neurological nor apparent physical evidence, such as significant weight loss, to support her allegations of severe pain. This appeal followed.

II

A claimant for disability benefits bears the burden of proving a disability, 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1502 (1980); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972), which is defined by statute as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; . . . ." 42 U.S.C. § 423(d)(1)(A). Once the claimant makes a prima facie showing of a physical impairment which effectively precludes him from returning to his past work, the burden of going forward shifts to the Secretary. The Secretary then must show two things: (1) that the claimant, considering his age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job and (2) that this specific type of job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976); *Taylor v. Weinberger*, 512 F.2d 664, 666 (4th Cir. 1975).

To regularize the adjudicative process, the Social Security Administration has recently promulgated new and detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to his medical condition. These new regulations were intended both to clarify for claimants how disability is determined when vocational factors are considered and to assure consistent disability determinations at all levels. 43 Fed.Reg. 55,349, 55,349 (1978). Codified at 20 C.F.R. Subpart P, §§ 404.-1501–.1539 & Apps. 1–2 (1980), they became effective February 26, 1979 and governed the ALJ's decision in this case.

These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1503 (1980). If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.* § 404.1503(a). Under the process the ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether that impairment meets or equals the medical criteria of Appendix 1 which warrants a finding of disability without considering vocational factors; and (4) if not, whether the impairment prevents him from performing his past relevant work. By satisfying either step 3 or 4, the claimant establishes a prima facie case of disability. The burden then shifts to the Secretary and leads to the fifth and final inquiry in the sequence: whether the claimant is able to perform other work consider-

ing both his remaining physical and mental capacities (defined as residual functional capacity) and his vocational capabilities (age, education, and past work experience) to adjust to a new job. When the fifth step in the process is reached, the interrelation of these factors is governed by the rules of Appendix 2 and the remaining regulations, especially 20 C.F.R. §§ 404.1504–.1513. Appendix 2 consists of tables or "grids" that indicate the proper disability determinations for various combinations of age, education, and previous work experience in conjunction with the individual's residual functional capacity, *i. e.*, his maximum capacity for sustained performance of the physical and mental requirements of jobs. *Id.* App. 2 § 200.00(c). In selecting the proper table, only the physical exertional or strength limitation portion of residual functional capacity—the ability to do sedentary, light, medium, heavy, or very heavy work—is considered. Where the findings as to all factors then coincide with the criteria of a particular rule, the rule is conclusive. Where they do not coincide, the rule serves as a guideline along with the principles and definitions in the regulations, and full consideration must be given to all relevant facts in the case. *Id.* § 404.1513, App. 2 § 200.00(a), (d)–(e). Where nonexertional limitations (mental, sensory, or skin impairments)—the other portion of residual functional capacity—are present, alone or in combination with strength limitations, the factors cannot coincide precisely with a rule. *Id.* § 200.00(d)–(e). In addition, the rules are not conclusive where a combination of impairments limits the range of work that an individual can perform at a given exertional level. *Id.* § 200.00(d); 43 Fed.Reg. 55,349, 55,351 (1978). Finally, the regulations provide that the claimant may present evidence to rebut the ALJ's findings of fact with respect to vocational factors and residual functional capacity. 20 C.F.R. Subpart P, App. 2 § 200.00(a).

The tables in Appendix 2 also reflect the existence of unskilled jobs in the national economy at various functional levels (sedentary, light, medium, heavy, and very heavy), *id.* § 200.00(b), by incorporating administrative notice of various occupational publications and studies.

III

In this case, the ALJ reached the fifth step of the sequence, expressly finding that Mrs. Hall could not perform her past relevant work because it required substantial lifting. Accordingly, he next made findings of fact as to Mrs. Hall's age, education, residual functional capacity, and work experience. The record substantiates the ALJ's finding that Mrs. Hall, at age 46, was a "younger individual age 45–49" and his finding that she had a limited education.[1]

The ALJ next determined that Mrs. Hall had the residual functional capacity to do sedentary work, which is defined as follows:

> Sedentary work entails lifting 10 pounds maximum and occasionally lifting or carrying such articles as dockets (e. g., files), ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

*Id.* § 404.1510(b). Under a proper application of this definition, we do not believe there is substantial evidence to support the sedentary work capacity finding. Mrs. Hall testified that she cannot sit still very long, cannot walk far, cannot bend over or lift her arms more than halfway, and knows of no jobs which she can perform. This con-

1. Limited education refers to competence in reasoning, arithmetic, and language skills which, although more than that which is generally required to carry out the duties of unskilled work, does not provide the individual with the educational qualifications necessary to perform the majority of more complex job duties involved in semi-skilled or skilled jobs. Absent evidence to the contrary, a seventh grade through the eleventh grade level of formal education is considered a limited education.

20 C.F.R. § 404.1507(d) (1980).

cededly self-serving testimony is not essentially refuted by the medical evidence before the ALJ. Dr. Cappiello suggested to Mrs. Hall that she return to work if her employer had any light work. There is no evidence in the record to indicate what Dr. Cappiello meant by light work, in particular if his meaning is equivalent to the definition of light work in the regulations. *See id.* § 404.1510(c). While if accepted at face value the physical capacities evaluation prepared by the state agency's physician might support a conclusion that Mrs. Hall could do sedentary, light, or even medium work, that physician never saw or examined her and based his evaluation on medical reports which simply do not furnish this information. His report accordingly should have been discounted. *Williams v. Harris,* 500 F.Supp. 214, 216 (W.D.N.C.1980). Finally, Dr. Anderson's physical capacities evaluation indicated that Mrs. Hall could lift 10 pounds or less frequently, but also showed that she could not sit for 6 out of 8 hours and was restricted in her other movements. The medical evidence, therefore, was completely inconclusive as to whether Mrs. Hall could perform any, some, most, or all sedentary work. Where a claimant's ability to engage in substantial gainful activity may not cover the entire range of work, the rules are not conclusive. 20 C.F.R. Subpart P, App. 2 § 200.00(d) (1980); 43 Fed.Reg. 55,349, 55,351 (1978); *Wilson v. Richardson,* 455 F.2d 304, 307 (4th Cir. 1972) (where an individual's activity is frequently or transitorily restricted, that may demonstrate an inability, rather than an ability, to engage in substantial gainful employment). Finally, there is no evidence in the record and the ALJ made no findings as to whether Mrs. Hall also had nonexertional limitations affecting her capacity to perform sedentary work. These are necessary in determining a claimant's residual functional capacity. 20 C.F.R. § 404.1505, App. 2 § 200.00(d)–(e); *Freeman v. Harris,* 509 F.Supp. 96, 101 (D.S.C.1981). Given the importance of properly judging a claimant's residual functional capacity in applying the tables of Appendix 2, 43 Fed.Reg. 55,349, 55,352 (1978), this case must be remanded so that further evidence can be taken and proper findings made concerning Mrs. Hall's residual functional capacity.

The ALJ also categorized Mrs. Hall's work skills as semi-skilled.

> Semi-skilled work denotes work in which some skills are involved but the more complex work functions are not required. Semi-skilled jobs may require alertness and close attention to watching machine processes; or *inspecting,* testing or otherwise detecting irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities involving work functions of similar complexity. A job may be classified as semi-skilled where coordination and dexterity are necessary as in the use of the hands or feet for the rapid performance of repetitive tasks.

20 C.F.R. § 404.1511(c) (1980) (emphasis added). The ALJ made no explicit findings with respect to the skills required by Mrs. Hall's prior jobs even though, under the regulations, this is crucial in determining whether suitable alternative work exists in the national economy. *Id.* §§ 404.-1508, .1511; *Decker v. Harris,* 647 F.2d 291, 295 (2d Cir. 1981). Mrs. Hall's work skills acquired in furniture factories and Baxter Laboratories, would seem to be more properly categorized as unskilled,[2] and only her

2. Unskilled work denotes work which requires little or no judgment in the performance of simple duties that can be learned on the job in a short period of time. Considerable strength may or may not be required. As an example, where the primary work function of occupations consists of handling, feeding and offbearing (i. e., placing or removing materials from *machines which are automatic* or operated by others), or machine tending, and average successful job performance can ordinarily be achieved within 30 days, such occupations are considered unskilled. Other types of jobs requiring little specific vocational preparation and little judgment are likewise unskilled. No acquired work skills can be attributed to individuals who have performed only unskilled work.

job inspecting cut garment pieces for Washington Mills seems to be semi-skilled although there is insufficient record evidence to draw that conclusion. In addition, the ALJ found that Mrs. Hall has a limited education; by definition this does not provide her with education necessary to perform most semi-skilled or skilled jobs. *See* 20 C.F.R. § 404.1507(d) (1980), note 1 *supra.* The regulations also provide that "[w]ork performed 15 years or more prior to the point at which the claim is being considered for adjudication ... is ordinarily not considered vocationally relevant." *Id.* § 404.1508. Therefore, Mrs. Hall's job as a garment inspector should either not be considered or given very little weight. Finally, while the ALJ never expressly determined whether Mrs. Hall's work skills are transferable, *id.* § 404.1511(e), he applied Rule 201.20 of Appendix 2, Table 1, which requires that finding. The record is totally devoid of evidence on the issue of transferability.

Because the ALJ failed to make any findings either as to the skills required by Mrs. Hall's past jobs or their transferability, these must be made on the basis of further evidentiary proceedings on remand. In making such findings, the ALJ may, and ordinarily should, require the testimony of a vocational expert. *Phillips v. Harris,* 488 F.Supp. 1161, 1167–69 (W.D.Va.1980). Under the new regulations, the ALJ is "expected to make the ultimate determinations as to the skill levels of a claimant's vocationally relevant past jobs and the relationship of those skills to potential occupations," 43 Fed.Reg. 55,349, 55,361 (1978), and requiring the testimony of a vocational expert is discretionary. *Id.* at 55,362. While this court has recognized the discretion of the ALJ in requiring vocational expert testimony, *McLamore v. Weinberger,* 538 F.2d at 575, we have held that this is the preferred method of proving alternate employability, a process which requires evaluating past work experience. *Smith v. Califano,* 592 F.2d 1235 (4th Cir. 1979). In addition, we recently have emphasized that in making these critical determinations "the ALJ is not qualified to provide affirmative vocational evidence," and in doing so, misperceives his role. *Wilson v. Califano,* 617 F.2d 1050, 1053–54 (4th Cir. 1980). On remand, the ALJ should give consideration to the expressed views of this court on the appropriate procedures for assessing Mrs. Hall's past work skills and their transferability.

## IV

Mrs. Hall also questions the Secretary's use of the tables in Appendix 2 to meet the second component of his burden: showing the existence of specific types of jobs which are available in the national economy and are suitable for this claimant. The tables provide a means for meeting this burden by taking administrative notice of the existence of unskilled jobs at various functional levels. When a particular rule is applicable, the Secretary is relieved under this regulatory scheme from any burden to identify specific alternative jobs.

This court, with others, has "agreed that the Secretary may administratively notice the *existence* of such jobs in the economy, [but] facts pertaining to the capacity of a specific individual can be supplied only by particularized proof." *Taylor v. Weinberger,* 512 F.2d at 668 (footnote omitted). Accordingly we have in the past required the Secretary to identify specific alternative jobs so that the claimant might fairly challenge their specific suitability for and availability to him. *See generally* 3 K. Davis, Administrative Law Treatise § 15.18, at 198–206 (2d ed. 1980).[3] This proof ordinarily required expert vocational testimony. *Smith v. Califano,* 592 F.2d at 1236. Use of

20 C.F.R. § 404.1511(b) (1980) (emphasis added).

3. Under the new regulations, the claimant can introduce evidence to rebut the ALJ's findings with respect to residual functional capacity, age, education, and past work experience. 20 C.F.R. Subpart P, App. 2 § 200.00(a) (1980). If the ALJ does not make these findings until his report, however, the claimant can only seek an opportunity to rebut at the Appeals Council level.

the tables, therefore, raises two questions about the compatibility of the new regulations with the case law: the extent to which the regulations dispense with expert vocational testimony and whether the Secretary must still provide the claimant with specific job titles.

Although several courts have expressed their concerns with the diminished role of vocational experts under the new regulations and with the dangers of mechanical application of the tables, most that have so far considered the problem have found the use of such experts' testimony, as in the past, to be within the ALJ's discretion. *See, e. g., Frady v. Harris*, 646 F.2d 143, 144 n.3 (4th Cir. 1981); *Croom v. Harris*, 512 F.Supp. 240 (M.D.La.1981); *Freeman v. Harris*, 509 F.Supp. at 103; *New v. Harris*, 505 F.Supp. 721, 726 (S.D.Ohio 1980); *Walker v. Harris*, 504 F.Supp. 806, 812 (D.Kan. 1980); *Wilson v. Harris*, 496 F.Supp. 746, 748 (E.D.Wis.1980); *Phillips v. Harris*, 488 F.Supp. at 1169. Several other courts, however, have felt that the new regulations, and in particular the tables, do not provide sufficient specificity to ensure procedural fairness to the claimant and that they may not, therefore, be used in *denying* benefits by directing a conclusion of no disability. *See, e. g., Decker v. Harris*, 647 F.2d at 298 & n.4; *Maurer v. Harris*, 502 F.Supp. 320, 323–24 (D.Ore.1980); *Santise v. Harris*, 501 F.Supp. 274, 277 (D.N.J.1980).

Our own recent decision by a divided panel in *Frady v. Harris*, 646 F.2d 143, technically precludes consideration by this panel of the claimant's general challenge to the use of the tables to make directed conclusions of nondisability. We observe, however, that in *Frady* this court was careful to limit its approval of the tables' use to the specific facts there presented. Any resulting uncertainty on the point may, of course, be avoided in this case if upon remand a vocational expert's testimony is received on the question whether claimant is able to perform specific alternative jobs available in the national economy.

We vacate the judgment of the district court and remand with instructions to remand to the Secretary for further proceedings in accordance with this opinion.

*VACATED AND REMANDED.*

ALBERT V. BRYAN, Senior Circuit Judge, dissenting:

I would affirm upon the findings and conclusions stated in the Memorandum of Decision of the District Judge.