**Reginald G. MONTGOMERY**

v.

**Richard S. SCHWEIKER,[1] Secretary, Department of Health and Human Services.**

**Civ. No. N 80–3056.**

United States District Court, D. Maryland.

Nov. 9, 1981.

---

1. Richard S. Schweiker has succeeded Patricia R. Harris as Secretary of the Department of Health and Human Services; accordingly, the appropriate substitution has been made pursuant to 42 U.S.C. § 405(g) (1976).

James F. McAvoy, and Stuart R. Cohen, Legal Aid Bureau, Inc., Hughesville, Md., for plaintiff.

J. Frederick Motz, U. S. Atty. and Glenda G. Gordon, Asst. U. S. Atty., for defendants.

## MEMORANDUM

NORTHROP, District Judge.

By complaint filed December 1, 1980, by counsel, the plaintiff invoked the jurisdiction of this Court pursuant to 42 U.S.C. § 405(g) (1976, as amended), seeking judicial review of the defendant's decision denying his entitlement to disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act. The defendant answered the complaint, furnishing the transcript of administrative proceedings. The parties have filed cross-motions for summary judgment, and the Court deems an oral hearing unnecessary. Local Rule 6.

By applications filed in May and August of 1979, the plaintiff initiated his requests

for SSI and DIB, respectively. (Tr. 53–56; 59–62).[2] His DIB application set forth only the scantiest recitation of the grounds upon which disability was claimed: "shoulders, arms, and hands—caused from prior accident." (Tr. 59). The alleged onset date was given only as the "first quarter of 1977." After the plaintiff's applications were administratively denied, he requested and was given a hearing before an administrative law judge (ALJ), on March 25, 1980. (Tr. 25–52). The hearing lasted one-half hour, and no one appeared at the hearing to testify, or for any other purpose, other than the plaintiff himself. At the outset of the hearing, the ALJ inquired whether plaintiff desired counsel. The entire colloquy on the subject of representation by counsel follows:

> ALJ: Before we proceed, I should note that the hearing notice indicated that if you wanted to bring an attorney, you could do so. Since you have not, I assume you're prepared to have me go ahead with the hearing at this. [sic] Is that correct?
>
> CLAIMANT: Yes, sir.

(Tr. 27).

At the hearing, it developed that plaintiff was born on January 22, 1933. He grew up on a subsistence farm, helping with the farm chores. He has a second grade education, and, although he can write a little and can orally solve elementary addition and subtraction problems, he cannot read. He has 13 children, seven of whom reside with him. He does not drive a car, his license having been revoked following an accident several years ago. His entire vocational history consists of unskilled, heavy labor. (Tr. 29–51, *passim*).

The transcript of the hearing reflects that plaintiff had a great deal of difficulty in articulating the circumstances surrounding the onset and nature of his physical problems, as well as the degree of pain and impairment he suffers from them. A sampling of plaintiff's attempts at expressing himself follows:

2. References are to the transcript of administrative proceedings filed with defendant's an-

[Q] Did something in particular happen in the beginning of '77, that caused you to stop working?

A Yes. In the beginning, well, my back was hurting and we was working down there digging ditches, and I was off a while. I was off then. I hurt my—I broke a wrist.

Q All right. You broke your wrist. When did that happen, do you know?

A I don't know exactly, but (UNINTELLIGIBLE) all the way back here. (Tr. 29).

\* \* \* \* \* \*

A But I wasn't—you know, I had been hurting my back. My back start hurting by using picks and stuff. I had to get off, and while I was off I was hauling myself some wood in order to get on the truck. And we walked off and broke my wrist and had to go to the hospital to have it operated on.

Then he wore a cast on it a long time, and then he operated on it. Then one day I was out there sitting up there talking, and it's only been broke every since '59. (Tr. 30).

\* \* \* \* \* \*

A (UNINTELLIGIBLE) can't do nothing. I was raking the yard, and the hand swell up. This here hand been broke. It been broke all the way in two, it's solid, you know. And I broke it—one of them things up in—one of these bones, they been—in here, you know. Replace it, and—he operated—I mean he put a cast on it. (UNINTELLIGIBLE) took it off. It never did have no strength in it and I broke it, you know, the first time. (Tr. 32).

\* \* \* \* \* \*

A When they have cloudy weather, my shoulders and—and I have the pain running down the side, Judge. They said it's

swer.

from rheumatism or whatever you call it. Ark or something.

(Tr. 40).

\* \* \* \* \* \*

[A] And my shoulder hurting, so we get T-shirts. I can manage to get it over this arm, and I can get arm this out, but sometimes I can't get the T-shirt on like. You know, like put my arm sometime, this up in here.

(Tr. 46).

The record before the ALJ also contained medical reports, including records from the plaintiff's treating physicians (Drs. Cobey and Sanchez), dating back to the mid-1960s. These records substantiated a history of orthopedic problems, involving both wrists and the lumbar spine. (Tr. 91–124). In addition, a medical report by another of plaintiff's treating physicians, Dr. Pritchett, indicated that plaintiff was being treated for tension headaches (post-concussion) and arthritis. (Tr. 125–28). The file also contains an orthopedic consultation by Dr. Hamid R. Quraishi, dated June 19, 1979. Dr. Quraishi diagnosed four orthopedic impairments, as follows:

1. Chronic strain lumbosacral spine.
2. Subacromion bursitis, supra spinatus tendonitis right shoulder.
3. Status post, healed fusion of the right wrist with weakness in the hand.
4. Status post, surgery left wrist, probably for DeQuervain disease.

(Tr. 131).

Dr. Quraishi's concluding remarks were as follows:

This patient has been off work for the past three years. He was a laborer. I do not think this patient with his multitude of problems with the right wrist, right shoulder and back could do hard work. I would recommend the patient to do light work where he does not have to lift anything more than 20 lbs., push, pull or bend over, or do a lot of walking.

*Id.*

Records submitted by Dr. Sanchez in October 1979 indicate that plaintiff was operated on in April 1978 to cure a recalcitrant fracture of the left carpal navicular. (Tr. 132–135). The administrative record concludes with a letter to the ALJ from Dr. Sanchez dated March 10, 1980, expressing the following conclusion: "Obviously this patient may not be able to perform heavy work as a laborer, but there are so many things that he can do based on his capabilities and motivation." (Tr. 136).

The ALJ issued his written decision on April 16, 1980, finding the plaintiff not disabled. He concluded that the plaintiff could not return to his accustomed work as an unskilled, heavy laborer, but, having found the plaintiff able to perform light work, he concluded that plaintiff was not disabled, by applying Rule 202.16 of the so-called grid regulations, 20 C.F.R. § 404, Subpart P, App. 2. Although the ALJ concluded that plaintiff has the residual functional capacity to perform light work as that is defined in 20 C.F.R. § 404.1510(c) (1980), the ALJ did not make specific, independent findings of fact regarding plaintiff's abilities with regard to the movement or strength criteria listed in that regulation. Rather, the ALJ's conclusion in regard to light work appears to have been based only on the report of Dr. Quraishi, the conclusion of which he incorporated by reference in his decision, as follows:

Dr. Quraishi, the consultative physician, felt that claimant could do light work as long as he was not required to push, pull, bend over or do a lot of walking. Based upon the foregoing the Administrative Law Judge finds that claimant retains the residual functional capacity to perform light work.

(Tr. 19).

The ALJ did not specifically evaluate plaintiff's subjective complaints of pain. Rather, the plaintiff's pain was discussed only as it was incorporated in the histories recited by Drs. Sanchez and Quraishi. *Id.* Although the plaintiff was not at all articulate in regard to expressing his subjective complaints of pain, he did refer to pain on a number of occasions during the hearing. *See, e.g.,* Tr. 32, 40, 41, 46, and 50–51.

The function of a district court in reviewing social security claims is a narrow one. The Court is constrained from substituting its judgment as to the facts for that of the Secretary. Rather, the Court is only to decide whether the Secretary's decision is supported by substantial evidence and was reached in accordance with the principles of law governing such matters. *See, e.g., Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) and *Blalock v. Richardson*, 483 F.2d 773, 775–76 (4th Cir. 1972). One of the cardinal principles governing social security disability proceedings is that "[c]laimants in disability cases are entitled to a full and fair hearing of their claims, 20 C.F.R. 404.927 and 416.1441, and the failure to have such a hearing may constitute good cause sufficient to remand to the Secretary under 42 U.S.C. § 405(g) for the taking of additional evidence." *Sims v. Harris*, 631 F.2d 26, 27 (4th Cir. 1980). This principle has been applied in a number of Fourth Circuit cases besides *Sims*. *See, e.g., Walker v. Harris*, 642 F.2d 712 (4th Cir. 1981); *Marsh v. Harris*, 632 F.2d 296 (4th Cir. 1980); *Cullison v. Califano*, 613 F.2d 55 (4th Cir. 1980). Although the fact patterns in the cited cases varied, the claimants in each of them shared a common inability clearly to express themselves and to articulate their medical history and present complaints; all of them lacked the ability to present their claims with any degree of coherence by themselves. In all of the cited cases, as here, the claimant was not represented by counsel. *See, e.g., Marsh v. Harris*, 632 F.2d at 299.

■ In the instant case, there was virtually no discussion by the ALJ of how counsel could be obtained by the plaintiff or the benefits of representation by counsel, let alone any conduct or statement by the plaintiff himself showing an *informed* decision to proceed without counsel. Indeed, the ALJ merely assumed that plaintiff desired to proceed without counsel based on the facts that plaintiff did not have counsel with him and that the hearing notice notified plaintiff of his right to be represented by counsel. As it turns out, this was an inappropriate assumption, because the plaintiff is illiterate.

■ In addition to the absence of counsel, the cited line of cases shares another cardinal similarity, which is, perhaps, the most important common thread among them. Certainly, it is one that is determinative. That is, the *pro se* claimant was unable to articulate the legal and/or factual basis for his or her claim and was not affirmatively assisted by the ALJ in developing that claim. Admittedly, the ALJ has a difficult duty to fulfill in assisting a basically inarticulate individual to make a coherent presentation of facts bearing upon physical and vocational capabilities. Nonetheless, it is a duty that the Fourth Circuit has consistently imposed on ALJs in such cases as *Walker, Marsh*, and *Sims*, cited above.

In the instant case, the hearing lasted only one-half hour. *See Walker v. Harris*, 642 F.2d at 714 (19 minute hearing). In particular, the residual physical capabilities of the plaintiff, as limited both by pain and physical restrictions, were of paramount importance. The record indicates many attempts by the plaintiff to describe both his pain and his physical limitations, to no avail. Under the totality of the circumstances, the hearing in the instant case was essentially indistinguishable from those found wanting by the Fourth Circuit in the cases cited above. Thus, this Court concludes that there is good cause for remanding the matter for a new hearing. 42 U.S.C. § 405(g); *Sims v. Harris*, 631 F.2d at 27.[3]

■ The record in this case is also deficient in several other regards, all of which can be cured on remand. In particular, the ALJ did not specifically evaluate plaintiff's

---

**3.** On remand, a *de novo* hearing should be conducted with plaintiff represented by counsel. It appears that counsel from The Legal Aid Bureau of Southern Maryland has entered an appearance in the administrative proceedings on plaintiff's behalf, and such counsel should continue to represent him in further proceedings in this case, including further administrative and judicial proceedings.

subjective complaints of pain. Although not well articulated, the plaintiff made numerous complaints of pain during the hearing, and the failure of the ALJ specifically to reject (or even to comment upon) plaintiff's pain testimony leads to an inference that it was not considered. *See, e.g., Chester v. Mathews,* 403 F.Supp. 110, 114 (D.Md. 1975); *Storck v. Weinberger,* 402 F.Supp. 603, 607 (D.Md.1975). On remand, the ALJ must specifically evaluate plaintiff's pain testimony, and should make a specific finding with regard to plaintiff's credibility in this regard. *Id.*

Additionally, it would appear that the ALJ did not specifically address the definitional elements of light work as defined in 20 C.F.R. § 404.1510(c) (1980), now codified as 20 C.F.R. § 404.1567 (1981). If the ALJ is inclined to find plaintiff capable of performing light work after a further hearing, his decision should specifically reflect the manner in which he reached that conclusion, applying the elements in the regulatory definition of "light work". *See Hall v. Harris,* 658 F.2d 260, 265–66 (4th Cir. 1981).

It further appears that the plaintiff may qualify for consideration as a person who has performed arduous, unskilled labor for a long period of time, who has little education, and who has no transferable skills. There is a special provision in the disability regulations covering such individuals, permitting them to be found disabled in cases where rigid application of the grid table rules would result in a finding of "not disabled." 20 C.F.R. § 404.1512 (1980), now codified as 20 C.F.R. § 404.1562 (1981). In that the plaintiff would seem to be entitled to consideration under that section, the ALJ should, on remand, consider whether plaintiff qualifies as disabled under that section. It may well be that, as a matter of fact, plaintiff is found not eligible under that section, but in any event, he should be considered under it.

Finally, plaintiff's summary judgment motion vigorously contests the general validity of the grid table regulations as a basis for reaching a finding of "not disabled." The general validity of those regulations was established in this Circuit by the decision in *Frady v. Harris,* 646 F.2d 143 (4th Cir. 1981), and the Fourth Circuit declined a recent opportunity to reconsider the issue in *Hall v. Harris,* 658 F.2d at 268. Of course, this Court is precluded by those decisions from re-examining the general validity of the grid table regulations. However, this Court would remind the defendant of the strongly qualified nature of the Fourth Circuit's "reaffirmance" of *Frady* in *Hall,* 658 F.2d at 268:

> We observe, however, that in *Frady* this court was careful to limit its approval of the tables' use to the specific facts there presented. Any resulting uncertainty on the point may, of course, be avoided in this case if upon remand a vocational expert's testimony is received on the question whether claimant is able to perform specific alternative jobs available in the national economy.

Thus, the Court would think it best in the instant case for the Secretary to obtain the testimony of a vocational expert to establish what, if any, specific alternate jobs, available in the national economy, are within plaintiff's residual capacity.

For all the reasons stated, an order will be entered separately remanding this case to the jurisdiction of the defendant for further administrative proceedings in accordance with this Memorandum opinion.