862 F.2d 870
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
June R. SWAFFORD, Plaintiff-Appellant,
v.
Otis R. BOWEN, Secretary, Department of Health and Human
Services, Defendant- Appellee.
 No. 88-3951.
 United States Court of Appeals, Fourth Circuit.
 Argued: Oct. 5, 1988.
Decided: Nov. 18, 1988.
 
 Rita M. McKinney (Yarborough, Moore & Smock, on brief), for appellant.
 Russell Alan Shultis (Vinton D. Lide, United States Attorney; Donald A. Gonya, Chief Counsel for Social Security; Randolph W. Gaines, Deputy Chief Counsel for Social Security Litigation; A. George Lowe, Chief, Disability Litigation Branch, Office of the General Counsel, Social Security Division, Department of Health and Human Services, on brief), for appellee.
 Before DONALD RUSSELL, JAMES DICKSON PHILLIPS and CHAPMAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 June Swafford appeals the district court judgment affirming the Secretary of Health and Human Services's denial of her application for social security disability benefits. Swafford claims she is unable to work because of Organic Brain Syndrome, a condition that may be genetic or the result of a childhood accident. She has had a checkered work history and contends she is unable to hold any job because of her inability to meet job production requirements, difficulty in following simple instructions, and inability to learn and retain necessary job skills. Because there is substantial evidence to support the Secretary's determination that Swafford has a sufficient residual functional capacity to perform work available in the national economy, we affirm.
 
 
 2
 * The Secretary, adopting the findings of an Administrative Law Judge (ALJ), found that Swafford was not currently employed and had a severe impairment which prevented her from performing her previous work, but then, applying step 5 of the sequential evaluation process mandated by 20 C.F.R. Sec. 404.1520, see Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir.1981), found that she nevertheless had the residual functional capacity to perform other work available in the national economy and so was not disabled. The district court, adopting a magistrate's report, affirmed this determination.
 
 
 3
 Swafford challenges the determination on several grounds.
 
 
 4
 * She first contends that her impairment is sufficiently severe to satisfy the criteria of 20 C.F.R. Subpart P, Appendix 1, Sec. 12.02, on "organic mental disorders." If she were able to meet these criteria, this would mandate a finding of disability under step 3 of the sequential evaluation process. See Hall v. Harris, 658 F.2d at 264. Section 12.02 has two subparts, and a claimant must satisfy both. Part A includes loss of specific cognitive abilities, such as disorientation to time and place, memory impairment, or disturbance in mood. Part B requires that the dysfunctions of part A must result in at least two of the following: marked restriction of activities of daily living, marked difficulties in maintaining social functioning, deficiencies of concentration, and repeated episodes of deterioration in work settings. The Secretary, by the ALJ, found that Swafford had met the requirements of part A but not part B.
 
 
 5
 We agree with the district court that there was substantial evidence to support this finding. In response to a question asking what she usually did in the mornings, for example, Swafford replied:
 
 
 6
 Just do, just do maybe just a little bit of housework, that's about it, I don't really have that much to do. Maybe watch after my three year old so that he don't get into things. Just do the basic things like make beds, something like that. Only the few little things that I have to do.
 
 
 7
 This testimony supports the ALJ's conclusion that Swafford could function adequately in her daily activities and so could not establish the listed impairment she claims.
 
 B
 
 8
 Swafford next claims that there was not substantial evidence to support the Secretary's determination that she could perform work available in the national economy. Specifically, she contends that while there was evidence that she could do housekeeping type work in her own home, there was not substantial evidence that, as the ALJ found, she could do housekeeping or janitorial type jobs elsewhere, in other domestic or industrial settings. She urges a distinction between doing this type work inside and outside the home based upon her inability to follow instructions.
 
 
 9
 We must concede that the evidence respecting her ability to follow work instructions had ambiguous elements. There were intimations that she might have significant, disabling difficulties.
 
 
 10
 Nevertheless, there was credible evidence that she could indeed sufficiently follow the type of instructions that would be given in this type of domestic or industrial employment. In reviewing the testimony bearing upon this issue, the ALJ fairly concluded that
 
 
 11
 it is apparent that the claimant would be unable to understand, remember and carry out job instructions of any degree of complexity. However, the psychological and psychiatric evidence indicates that she can adequately deal with simple, noncomplex job instructions. For example, she could perform nonproduction jobs such as those named by the vocational expert.
 
 
 12
 Tr. 12. Because there was substantial evidence for this conclusion, the district court properly affirmed the Secretary's adoption of the ALJ's findings. It is not relevant that another result might properly have been reached so long as there was substantial evidence for the Secretary's conclusions. " 'The Secretary, and not the courts, is charged with resolving conflicts in the evidence, and it is immaterial that the evidence before him will permit a conclusion inconsistent with his.' " Shively v. Heckler, 739 F.2d 987, 990 (4th Cir.1984) (citing Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir.1964)). Further, it should be recognized that the standard of employability is not whether the individual claimant could in fact find a job, but whether the claimant could
 
 
 13
 engage in any ... kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.
 
 
 14
 42 U.S.C. Sec. 423(d)(2)(A).
 
 II
 
 15
 One final, collateral issue remains. All of Swafford's medical evaluations occurred after the termination of her insurance eligibility in 1982. Some of this evidence did indicate that at the time of these examinations she was disabled. In June 1984 Dr. Bradley concluded that Swafford's condition satisfied the requirements of Appendix 1, Sec. 12.02 A and B, which would entail under step 3 of the sequential evaluation process automatic declaration of disability. See Hall v. Harris, 658 F.2d 260, 264 (4th Cir.1981). Further, in 1986, Dr. Mullen concluded that Swafford was incapable of gainful employment.
 
 
 16
 Under Wooldridge v. Bowen, 816 F.2d 157 (4th Cir.1987), medical evaluations made after expiration of a claimant's insured status can be used to establish disability prior to this expiration. But a claimant has the burden of proving not simply the existence of impairment prior to expiration of insured status, which no one here contests, but disability. See Blalock v. Richardson, 483 F.2d 773 (4th Cir.1972). Dr. Bradley, however, limited the reach of his finding of a 12.02 disability only back to 1983, and therefore subsequent to the termination of Swafford's insured status, and Dr. Mullen's evaluation was limited to the claimant's present condition as of 1986. There was substantial evidence for the ALJ to discount that Dr. Bradley's examination revealed disability prior to 1983, and there was substantial evidence for the district court, which was the first judicial body to review Dr. Mullen's evaluation, also to conclude that Swafford had not proved that her disability existed before the termination of her insured status.
 
 
 17
 AFFIRMED.