Danny BRYANT, Plaintiff,

v.

Donna E. SHALALA, Secretary of Health and Human Services, Defendant.

Civ. A. No. 3:94–0319.

United States District Court,
S.D. West Virginia,
at Huntington.

March 24, 1995.

Rose A. Cyrus, Robinson & Rice, Huntington, WV, for plaintiff Danny Bryant.

Chief Counsel, Office of Regional Director, Philadelphia, PA, U.S. Atty., Charleston, WV, for defendant Donna Shalala, Secretary of Health and Human Services.

## *ORDER*

STAKER, District Judge.

The Court, having received the Findings and Recommendation of the United States Magistrate Judge made pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and having reviewed the record in this proceeding, objections not having been filed by either plaintiff or defendant, hereby ORDERS, for the reasons set forth by the Magistrate Judge, that the motion of plaintiff for summary judgment be granted, the like motion of defendant be denied, and the decision of the Secretary REVERSED. It is further ORDERED that this case be dismissed and retired from the Court's docket.

The clerk is directed to mail a certified copy of this Order to all counsel of record.

**545**

## *FINDINGS AND RECOMMENDATION*

TAYLOR, United States Magistrate Judge.

In this action, filed under the provisions of 42 U.S.C. § 405(g), plaintiff seeks review of the final decision of the Secretary of Health and Human Services denying his application for disability insurance benefits. The case is presently pending before the Court on cross-motions of the parties for summary judgment.

Plaintiff filed his application on February 27, 1991, alleging disability commencing July 13, 1990, as a result of chest and eye injuries. On appeal from an initial and reconsidered denial, an administrative law judge, after hearing, found plaintiff not disabled. The Appeals Council granted plaintiff's request for review, vacated the administrative law judge's decision and remanded the case for further consideration of plaintiff's mental impairments. Following a supplemental hearing, the administrative law judge again found plaintiff not disabled in a decision which became the final decision of the Secretary when the Appeals Council denied a request for review. Thereafter, plaintiff filed this action seeking review of the Secretary's decision.

At the time of the administrative decision, plaintiff was thirty-nine years of age and had obtained a high school education. His past relevant employment experience consisted of work as a coal miner. The medical evidence establishes that plaintiff is status post chest injury in 1983; has lost the vision in his right eye due to a work-related accident in July of 1990; and, suffers from mental impairments diagnosed as borderline intellectual functioning, major depression, and a passive-aggressive personality disorder. Though concluding that he was unable to perform his past work,[1] the administrative law judge determined that plaintiff had the residual functional capacity for a limited range of heavy level work. On the basis of this finding, and relying on Rules 204.00, et seq., of the medi-

---

1. This finding had the effect of shifting a burden of production to the Secretary with respect to other work plaintiff was capable of performing.

*Hall v. Harris,* 658 F.2d 260, 264 (4th Cir.1981); *McLamore v. Weinberger,* 538 F.2d 572, 574 (4th Cir.1976).

cal-vocational guidelines[2] and the testimony of a vocational expert, he found plaintiff not disabled.

From a review of the record, it is apparent that the Secretary's decision lacks substantial evidentiary support. Physically, plaintiff claims to suffer work-related restrictions, mainly in his ability to lift. This is attributed to a 1983 work-related injury involving the right rib cage, diagnosed as "costochondritis," with a slight depression at the third and fourth ribs and residual tenderness noted during an April 24, 1991 physical exam. While plaintiff did return to his exertionally heavy coal mining job approximately eight months after this injury, he reported to several sources that he no longer performed heavy lifting and had help from other workers with heavier duties, raising some question as to whether he really did possess the ability to perform heavy level work as the administrative law judge found. Plaintiff also suffered a work-related injury to his right eye in July of 1990 and, despite a number of surgeries and procedures to restore vision, plaintiff is completely blind in this eye. He asserts that the resultant lack of depth perception and difficulties adjusting to different levels of light have imposed significant problems on his ability to function.

The evidence also reflects the presence of mental impairments which have developed as a result of plaintiff's physical problems but which appear to be of even greater significance. While he never actually treated plaintiff, Dr. Ralph Smith, Jr., a psychiatrist, examined him on four occasions between August 19, 1991 and February 4, 1994, finding initially that he was suffering from an adjustment disorder related to his loss of eyesight and assessing him as having a global assessment of functioning (GAF) of seventy, consistent with mild symptoms or mild difficulty with social or occupational functioning.[3] Plaintiff's condition was noted to have worsened during each of the next two evaluations, with plaintiff reporting symptoms of in-creased anger, depression and withdrawal. Dr. Smith then changed his diagnosis to major depression and recommended psychotherapy. After his November 3, 1992, evaluation, however, he concluded that, despite having received treatment, plaintiff was worse. He also noted that he was suffering from a passive aggressive personality disorder and expressed the opinion that he would not benefit from "further psychiatric intervention." After his final evaluation on February 4, 1994,[4] Dr. Smith concluded that plaintiff was unchanged and had stabilized but had not made any progress in therapy. He assessed him as having a ten percent psychiatric impairment due to his eye injury and a twenty percent impairment due to borderline intellectual functioning and his personality disorder.

Plaintiff was referred by vocational rehabilitation to Dr. Elma Bernardo, a psychiatrist, for an initial evaluation on March 13, 1992, and she began treating plaintiff on July 31, 1992, continuing through at least May 6, 1993. This physician's initial diagnosis was major depression, single episode with an indication that his symptoms were mild as of that time. Her treatment notes reflect, however, that plaintiff had increasingly significant difficulty with anger as well as depression and physical problems, such as falling down, bumping into things and breaking objects at home due to his limited eyesight. Dr. Bernardo treated him with antidepressants, antianxiety agents and medication for insomnia. Improvement in sleep and mood were noted at different times but appear to have been only temporary. In December of 1992, she completed an assessment indicating that plaintiff had moderate limitations of activities of daily living and social functioning, frequent deficiencies of concentration, persistence or pace and continual deterioration in work or worklike settings. In a Mental Residual Functional Capacity Assessment, she also noted marked limitations of ability to carry out detailed instructions, sustain an

2. 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 4.

3. *See, Diagnostic and Statistical Manual of Mental Disorders*, 4th Ed., American Psychiatric Association, 1994 at 32.

4. The reports of this evaluation and that performed on November 3, 1992, were submitted to the Appeals Council for review.

ordinary routine without special supervision, work in coordination with others without being distracted by them and setting realistic goals or making plans independently of others. She additionally assessed plaintiff as having moderate limitation in a number of areas, with these being so extensive as to amount to a finding of disability. Though there are later reports from her in the record, they do not reflect much change in plaintiff's condition, and it is unlikely that her assessment would have changed.

Donald Swick, M.A., also provided psychological treatment to plaintiff from April of 1992 to February of 1993. There are no regular reports from this source in the record, but in a February 9, 1994 letter to plaintiff's counsel, he related that he had followed plaintiff regularly for depressive symptoms, and that he was demonstrating "marginal stability" when last seen in February of 1993. Although he could not comment on plaintiff's mental condition at the time of his letter, he did relate that he considered him disabled as of his last appointment. Mr. Swick also completed a Mental Residual Functional Capacity Assessment in November of 1992 wherein he rated plaintiff as markedly limited in his ability to understand and remember detailed instructions, to complete a normal workday and workweek without interruption from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. He, like Dr. Bernardo, also found plaintiff moderately limited in a number of other areas, which would appear to be consistent with his opinion on plaintiff's disability.

Psychological testing for workers' compensation was performed by Teresa Smith, Ph. D., on August 19, 1991, and Rosemary Smith, Psy.D., on February 4, 1994, producing I.Q. scores in the borderline range of functioning. Reading, spelling and math abilities were also found to be significantly below plaintiff's educational level. Dale Rice, M.A., also eval-uated plaintiff for the Secretary on April 23, 1993, reporting that he exhibited psychomotor retardation, a dysphoric mood, restricted affect and mild impairment of attention and concentration and immediate memory. I.Q. scores were relatively consistent with those from the other evaluators; however, Mr. Rice noted that plaintiff exhibited "minimal or hypoactive" motor activity and poor attention span and concentration on testing, with frequent lapses of attention and distractibility, which he felt produced an underestimate of plaintiff's I.Q. Persistence and motivation were considered adequate, however. His diagnosis was recurrent, moderate major depression and psychological factors affecting physical condition. His assessment of plaintiff's GAF was seventy-five, consistent with symptoms which could be considered "transient and expectable reactions to psychosocial stressors" and causing no more than slight impairment of social or occupational functioning.[5] This examiner also completed a "Medical Assessment of Ability to do Work–Related Activities (Mental)," finding plaintiff had a good to unlimited ability to make occupational, performance and personal social adjustments in all areas except dealing with work stresses and maintaining attention and concentration, which he rated as only "fair."

As treating physicians,[6] the opinions of Dr. Bernardo and Donald Swick are entitled to "great weight for they reflect an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Their opinions can be disregarded, therefore, only if there exists in the record "persuasive contradictory evidence." *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir.1983). The administrative law judge did choose to disregard the opinions of treating physicians, and the Appeals Council, though receiving additional evidence tending to support the treating physicians' opinions, found that there was no basis for disturbing the administrative law judge's

---

5. *See, Diagnostic and Statistical Manual of Mental Disorders, supra* at 32.

6. Even though Donald Swick is not a medical doctor, he is considered an "acceptable medical source" from which to secure evidence relative to a claimant's impairments, and judgments of psychologists as to the nature and severity of impairments and the restrictions resulting therefrom are considered "medical opinions." *See,* 20 C.F.R. §§ 404.1513(a)(3), 404.1527(a)(2).

conclusions. The evidence, however, simply does not support this determination. One basis cited by the administrative law judge for disregarding these opinions was an absence of observations of mental abnormalities from sources examining plaintiff for physical problems. It is observed, however, that plaintiff's adjustment problems, which apparently evolved into major depression, were not diagnosed until August of 1991, and the record reveals that the only physician to see plaintiff near or after this time was Dr. O'Connor who treated him for his eye problems. In a March 18, 1992 note, this physician reports that "[a]pparently he is depressed," but he believed that plaintiff should be put into a retraining program as soon as possible to help him work through this depression. Gloria Alderson, a rehabilitation specialist, related in a January 14, 1992 letter to the Workers' Compensation Fund that plaintiff continued to have difficulty coping with his injury, and his depression appeared to have gotten worse.

The administrative law judge was also of the belief that Dr. Bernardo's treatment notes were inconsistent, with some reports reflecting few abnormalities and others relating more extensive problems. A review of these reports reveals, however, that rather than being inconsistent, they simply document the course of plaintiff's treatment and reflect that medication and counseling resulted in improvement in sleep or mood at times, but that such improvements were not sustained. While the administrative law judge also concluded that this physician's opinions lacked clinical support, citing her reports reflecting improvement with medication and treatment, when all of her reports are considered it does not appear that plaintiff made any significant improvement. As Dr. Smith observed, his symptoms and the nature of his problem were the same in his most recent report as they had been when he saw him initially. The administrative law judge also pointed out the relative consistency between the "GAF" ratings from Dr. Smith, which, in his first two reports, ranged from sixty-five to seventy, with GAF ratings provided by Dale Rice. The administrative law judge, however, did not have access to the two more recent reports from Dr. Smith which reveal an assessment of sixty, reflecting the presence of moderate symptoms [7] consistent with Dr. Smith's determination that plaintiff's condition had worsened.

Finally, while the administrative law judge determined that the report and assessment from Dale Rice were more reflective of plaintiff's true functioning than those from the treating physicians, it is observed that this examiner's report is internally inconsistent with regard to material matters. Thus, he ultimately concluded that plaintiff's major depression was recurrent and of moderate severity, while at the same time rating plaintiff's GAF at seventy-five, which, as noted earlier, corresponds to only a slight impairment of social or occupational functioning and he found limitations resulting therefrom in only two areas, attention and concentration and handling work stresses. Further, Mr. Rice's conclusions relative to the degree of limitation of plaintiff's attention/concentration are inconsistent. In the summary contained in his report, he found that plaintiff had only a "mild" impairment in this area. During testing he observed that plaintiff exhibited "poor" attention and concentration with frequent lapses and distractibility. In his assessment of occupational function, he characterized this area as being "fair." [8] While this evaluator concluded that plaintiff's poor concentration resulted in an underestimate of his intellectual functioning, he observed that plaintiff's persistence and motivation were adequate, and he did not indicate that he believed this to be a deliberate attempt on plaintiff's part to perform poorly. These inconsistencies preclude any realistic assessment of Mr. Rice's views, and the Court is not clear as to what his views are with regard to significant aspects of plaintiff's mental functioning. Under such circumstances, the Court can only conclude that his report does not provide "persuasive contradictory evidence" such that the Secretary

---

7. *See, Diagnostic and Statistical Manual of Mental Disorders, supra* at 32.

8. The form completed by Mr. Rice reflects that "fair" means "ability to function in this area is seriously limited, but not precluded."

could rely upon it and disregard the opinions of plaintiff's treating physicians, opinions which are consistent in their essentials and supported by the results of numerous tests.

Being of the opinion that the Secretary's decision lacks substantial evidentiary support and that the great weight of the evidence establishes that plaintiff is unable to perform either his past work or any other substantial gainful activity, the Court concludes that the Secretary's decision must be reversed and plaintiff granted benefits.

### RECOMMENDATION

In light of the foregoing, it is RESPECTFULLY RECOMMENDED that defendant's motion for summary judgment be denied, that the like motion of plaintiff be granted and plaintiff awarded benefits in accordance with his application and the provisions of the Social Security Act as amended.

Plaintiff and defendant are hereby notified that a copy of these Findings and Recommendation will be submitted to the Honorable Robert J. Staker, United States District Judge, and that, in accordance with the provisions of Rule 72(b), Fed.R.Civ.P., the parties may, within thirteen days of the date of filing these Findings and Recommendation, serve and file written objections with the Clerk of this Court, identifying the portions of the Findings and Recommendation to which objection is made and the basis for such objection. The judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made in accordance with the provisions of 28 U.S.C. § 636(b) and the parties are advised that failure to file timely objections will result in a waiver of their right to appeal from a judgment of the district court based on such Findings and Recommendation. Copies of objections shall be served on all parties with copies of the same to Judge Staker and this Magistrate Judge.

The Clerk is directed to file these Findings and Recommendation and to mail a copy of the same to all counsel of record.

Dated March 2, 1995.