838 F.2d 1210
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Ada P. JONES, Plaintiff-Appellant,
v.
Otis R. BOWEN, Secretary, Department of Health and Human
Services, Defendant-Appellee.
 No. 87-3084.
 United States Court of Appeals, Fourth Circuit.
 Argued: Nov. 6, 1987.
Decided: Feb. 2, 1988.
 
 William E. Huffman for appellant.
 Lawrence John Harder, Assistant Regional Counsel, Office of the General Counsel, Department of Health & Human Services (Beverly Dennis, III, Chief Counsel, Region III, Charlotte Hardnett, Supervisory Assistant, Regional Counsel, Breckinridge L. Willcox, United States Attorney, Larry D. Adams, Assistant United States Attorney on brief) for appellee.
 Before K.K. HALL and ERVIN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 ERVIN, Circuit Judge:
 
 
 1
 Ada Jones, a 58 year old food supervisor, applied for disability benefits on June 19, 1985, alleging that she became disabled on February 8, 1985, due to a pinched nerve in her lower back and left leg problems. Her application was denied at all administrative levels, and she filed a complaint in the district court seeking review of the Secretary's decision pursuant to 42 U.S.C. Sec. 405(g).[1] By consent of the parties, United States Magistrate Daniel E. Klein, Jr., heard the case and decided that the Secretary's ruling that Mrs. Jones was capable of performing her past work as a food service supervisor was supported by substantial evidence. Magistrate Klein then granted the Secretary's motion for summary judgment. Mrs. Jones timely filed this appeal. We affirm.
 
 I.
 
 2
 The record in this case reveals that Mrs. Jones visited several physicians and other experts prior to filing her disability claim. To better understand what the experts said, and how their reports and testimony affected ALJ Friedenberg, we provide the following chronology:
 
 
 3
 April 1984--Mrs. Jones injured her back in an automobile accident.
 
 
 4
 April 18, 1984--Mrs. Jones reported to Dr. Otenasek, a neurosurgeon. He noted the absence of the left knee jerk reflex, and straight leg raising caused pain at 75 degrees. He reported weakness of the left quadricep and iliopsoas muscles. He diagnosed an acute left lumbar disc with root compression.
 
 
 5
 April 30, 1984--Dr. Otenasek reported "marked improvement" after 10 days of bed rest. Some weakness remained in the leg muscles. Straight leg raising caused no pain at 90 degrees.
 
 
 6
 May 23, 1984--Dr. Otenasek again reported "significant" improvement. Some lumbar spasm and stiffness of the back was present. Left knee jerk reaction remain absent, and the leg remained weak.
 
 
 7
 June 20, 1984--Dr. Otenasek reported minimal lumbar spasm and stiffness. Knee jerk was absent, and weakness of the leg muscles persisted. Physical therapy was prescribed.
 
 
 8
 August 1, 1984--Dr. Otenasek reported minimal lumbar spasm and stiffness. No pain on straight leg raises. No left knee jerk response. He restricted Jones to lifting no more than 30 pounds.
 
 
 9
 Mid August, 1984--Jones returned to work.
 
 
 10
 September 19, 1984--Jones' final visit to Dr. Otenasek. Minimal spasms and stiffness, no left knee jerk, some weakness in leg muscles persisted.
 
 
 11
 June 19, 1985--Jones filed for disability benefits alleging an onset of disability on February 8, 1985, due to a pinched nerve in her lower back and left leg problems.
 
 
 12
 July 2, 1985--Dr. Ardaiz, Jones' family doctor, reported that he examined Jones on June 14, 1985. She has gained 45 pounds. He diagnosed lumbalgia with left sciatic nerve compression, hypertension, bursitis of the left shoulder, and obesity. He reported that if Mrs. Jones could not do her work as a supervisor, she could not do any work.
 
 
 13
 October 14, 1985--Dr. Mehrullah Khan, a neurologist, reported that the left knee jerk reflex is present. He found that Jones could walk and stand without assistance. He believed that she suffered low back pain due to herniated disc disease at the L4 level.
 
 
 14
 April 25, 1986--Dr. Ardaiz reported in a letter to Jones' attorney that Jones was unlikely to be able to maintain employment because of a high absentee rate.
 
 
 15
 April 19, 1986--Leonard Perlman, Ed.D., a vocational expert evaluated Mrs. Jones. He reported that she could not resume employment because she was in physical discomfort, she tired quickly, and she had poor motor coordination.
 
 
 16
 Based on these facts ALJ Friedenberg ruled that Mrs. Jones was not disabled within the meaning of the Social Security Act. Magistrate Klein, believing the Secretary's decision to be supported by substantial evidence, granted the Secretary's motion for summary judgment. Because substantial evidence does exist to support the findings of the ALJ, we affirm the grant of summary judgment.
 
 II.
 
 17
 Section 205(g) of the Social Security Act, 42 U.S.C. Sec. 405(g), provides the standard of review for findings of fact made by the Secretary: "[T]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." The fact that the record may support an inconsistent conclusion is immaterial; this court's review is not a de novo proceeding, and even if we should disagree with the Secretary's decision, that decision should go undisturbed if substantial evidence supports it. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir.1972). Substantial evidence is that "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence. Blalock, 483 F.2d at 776.
 
 
 18
 Mrs. Jones bears the burden of proving her disability. 42 U.S.C. Sec. 423(d)(5); 20 C.F.R. Sec. 404.1520 (1980); Hall v. Harris, 658 F.2d 260, 264 (4th Cir.1981). Only when the claimant makes a prima facie showing of physical impairment which precludes her from returning to past relevant work, does the burden of going forward shift to the Secretary. Hall, 658 F.2d at 264. To regularize and clarify the adjudicative process surrounding disability claims, the Social Security Administration adopted a detailed set of regulations that give the Secretary a guideline by which to evaluate an individual's disability claim. These regulations include a sequential analysis of an applicant's claim. 20 C.F.R. Sec. 404.1520. Pursuant to this sequential analysis, the Secretary must determine whether the claimant: 1) is working; 2) has a severe impairment; 3) the impairment meets or equals a listed impairment; 4) the impairment prevents the performance of past relevant work; and 5) the impairment prevents the performance of any work. Id. If an individual is found not disabled at any step, further analysis is not necessary. Hall, 658 F.2d at 264.
 
 
 19
 In the present case, ALJ Friedenberg ended his analysis at the fourth step of the sequence, expressly ruling that Mrs. Jones retained the residual functional capacity to perform light work,[2] and that her past relevant work as a food service supervisor was not precluded by this limitation. Mrs. Jones argues that the Secretary, through ALJ Friedenberg, failed to accord adequate weight to the opinions of her personal physician, Dr. Ardaiz, and the vocational expert, Dr. Perlman. She argues that as a result of these errors, the decision of the ALJ is without substantial support in the evidence. We cannot agree.
 
 
 20
 The Secretary's finding that Mrs. Jones retains the residual functional capacity for light work is directly supported by the opinion of her treating neurosurgeon, Dr. Otenasek. In August and September of 1984, near the completion of his course of treatment for Mrs. Jones, Dr. Otenasek told her to limit her lifting to 30 pounds. Dr. Otenasek placed no other restrictions on Mrs. Jones. Although Mrs. Jones filed a claim for disability in June of 1985, there is no record of her having sought treatment with Dr. Otenasek or any other specialist after September, 1984.
 
 
 21
 Dr. Ardaiz, Mrs. Jones' family doctor, reported in July of 1985, that if plaintiff could not return to her past work, he doubted if she could perform other work. In April of 1986, Dr. Ardaiz wrote to Mrs. Jones' attorney, saying that she would not be able to return to work. Dr. Ardaiz' earlier report is not necessarily inconsistent with the Secretary's finding that Mrs. Jones could return to work. For the reasons following, we believe that the credibility of the latter report was properly discounted by the ALJ.
 
 
 22
 First, Dr. Ardaiz obtained no objective medical findings to support his conclusion that Mrs. Jones was unable to work.[3] In his April 1986 letter, he explained that he had seen Mrs. Jones on April 16, 1986, for a routine physical to monitor her high blood pressure. Dr. Ardaiz had last examined Mrs. Jones in June of 1985. Dr. Otenasek had last examined Mrs. Jones in September of 1984. Dr. Ardaiz' April 1986 letter sets out no basis for his conclusion other than Mrs. Jones' subjective complaints as related to him. Subjective complaints, without more, are insufficient to establish disability. 42 U.S.C. Sec. 423(d)(5)(A).
 
 
 23
 Dr. Ardaiz' paucity of medical findings should be juxtaposed against the findings of Dr. Otenasek. Dr. Otenasek reported that Mrs. Jones revealed only minimal muscle spasm, minimal to grade 1 stiffness of the back, straight leg raising without pain, slight weakness of the muscles of the left leg, no sensory loss, and adequate pedal pulses. These findings support Dr. Otenasek's conclusion that plaintiff need only be restricted from lifting more than 30 pounds.
 
 
 24
 Second, Dr. Otenasek is in a better position than Dr. Ardaiz to render an opinion about Mrs. Jones' functional limitations. We note first that Dr. Otenasek is a neurosurgeon who is expertly trained to offer an opinion as to Mrs. Jones' functional abilities as limited by her acute lumbar disc condition and resulting nerve compression. These ailments, like the pinched nerve and the leg problems alleged in her disability claim, are neurological conditions. Dr. Ardaiz is Mrs. Jones' family doctor. It is beyond dispute that Mrs. Jones' back and leg conditions were her most troublesome medical problems, yet Mrs. Jones argues that Dr. Ardaiz' opinion is entitled to much deference because he has treated her for most of her medical problems. At least one circuit court has opined that the medical opinion of specialists may be entitled to greater weight than that of general practitioners. Alvarado v. Weinberger, 511 F.2d 1046, 1049 (1st Cir.1975). Another court has held that where there is a conflict in the evidence, the testimony of a neurosurgeon constituted substantial evidence in support of the Secretary's decision to deny social security benefits. Grant v. Richardson, 445 F.2d 656 (5th Cir.1971). We conclude that on the facts of this case the testimony and reports of Dr. Otenasek constitute substantial evidence supportive of the Secretary's decision.
 
 
 25
 Even disregarding Dr. Otenasek's status as a specialist, he was in a better position than Dr. Ardaiz to render an opinion as to Mrs. Jones' functional limitations. Dr. Otenasek's treatment notes contain detailed objective clinical findings compiled as a result of physical examinations performed over the course of several months. Dr. Ardaiz' records contain no such findings; Dr. Otenasek kept Dr. Ardaiz apprised of Mrs. Jones' progress. Evidence of physicians who have been treating the claimant for social security disability over a long period of time is substantial evidence as compared to evidence of physicians who examine the claimant rarely, and whose reports are without objective support. See Branham v. Gardner, 383 F.2d 614 (6th Cir.1967). We conclude that Dr. Otenasek was the primary treating physician for Mrs. Jones' back and leg pain. As a result, his opinion is entitled to great weight. Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir.1983) quoted in Smith v. Schweiker, 795 F.2d 343, 345-346 (4th Cir.1986).
 
 
 26
 Mrs. Jones also contends that the Secretary failed to give sufficient weight to the opinion of Dr. Perlman that Mrs. Jones was incapable of performing any substantial activity. ALJ Friedenberg discounted the report and testimony of Dr. Perlman because his conclusions were based predominantly on the claimant's own symptomatology which was not supported by medical evidence in the record. Dr. Perlman made the following observation in his report:
 
 
 27
 She is in physical discomfort while attempting to sit and needs to get up and move around about once every 8 to 10 minutes, she also needs to provide support to her back (she used her left arm to do this during the last hour of the session). The client also noted difficulty with pain in the left leg and hip and has fallen as a result. As such, she is extremely cautious about walking any distance. Ms. Jones also fatigues easily upon minimal activities such as the vocational tests given her. Ms. Jones takes pain killers and high blood pressure medication, but is hesitant to take Percodan and takes it on occasion due to the side-effects which impair her vision and makes her drowsy.
 
 
 28
 (Tr. 148). The ALJ has the responsibility of assessing a claimant's residual functional capacity. 20 C.F.R. Sec. 404.1545(a). The vocational expert informs the ALJ's decision by testifying as to vocational issues, such as whether work skills acquired by an individual in his prior work can be used in other work and what specific occupations exist where such skills can be employed. 20 C.F.R. Sec. 404.1566(e). The vocational expert does not include within his range of expertise the degree of functional limitation suffered by a particular claimant. The Social Security Administration tells vocational experts: "You will not be expected to testify as to whether or not the claimant is under a disability, since you do not have the responsibility for deciding this ultimate legal issue. You should not express any opinion regarding the impairments involved and their effect on functional capacity, since these are medical matters." Dobrowolsky v. Califano, 606 F.2d 403, 410 (3rd Cir.1979). Even a cursory review of Dr. Perlman's report reveals that his opinion is based on judgments he made regarding Mrs. Jones' functional limitations. Furthermore, Dr. Perlman's conclusions were not supported by medical evidence, but were based largely on Mrs. Jones' complaints during the interview. Accordingly, the ALJ properly gave little weight to the vocational expert's opinion. The summary judgment in favor of the Secretary is due to be
 
 
 29
 AFFIRMED.
 
 K.K. HALL, Circuit Judge, dissenting:
 
 30
 I cannot agree with the majority's conclusion that a review of the record supports the Secretary's decision to deny benefits to Jones. For this reason, I respectfully dissent.
 
 
 31
 Contrary to the conclusion reached by the district court and by the majority in this appeal, I am convinced that the Secretary's decision is lacking in substantial evidence. In fact, I can find no evidence supporting the Secretary's decision. Without question, the objective medical evidence from the physicians who examined Jones supports the existence of claimant's severe back impairment and pain. Dr. Ardaiz's report concludes that Jones is unable to work. Dr. Kahn diagnosed chronic pain which was probably related to disc disease. The majority places much reliance on Dr. Otenasek's report which only limited Jones to lifting thirty pounds when she returned to work. However, Dr. Otenasek last examined Jones some nine months before she filed for benefits and two years before the hearing date. Jones had attempted to return to work after Otenasek released her but was unable to function adequately because of pain and side effects of medication. This earlier opinion by Dr. Otenasek is far outweighed by more recent medical opinions finding Jones unable to work. Moreover, the thirty-pound limitation imposed by Dr. Otenasek is exertional and his report does not negate the existence of the non-exertional impairment of pain to which Dr. Ardaiz, Dr. Kahn, and Dr. Perlman referred in their opinions.
 
 
 32
 The ALJ also failed to give any credibility to Jones' subjective complaints of pain and the side effects of the percodan. The ALJ clearly disregarded the medical evidence which supported Jones' subjective complaints of pain and medication side effects. Finally, the ALJ disregarded the vocational expert's conclusion that Jones could not perform her past relevant work on this same basis.
 
 
 33
 Under these circumstances, I fail to see how the Secretary's denial of benefits can stand. At a minimum, the Secretary has ignored medical reports based upon objective data, concluding that Jones could not perform any gainful employment; ignored the effect of claimant's pain medication; and discounted both medical evidence and claimant's testimony regarding her pain.[4] Such improper decision making entitles Jones to an outright reversal and award of benefits. I would, accordingly, vacate the judgment below and remand for an award of benefits.
 
 
 
 [1]
 402 U.S.C. 405(g) reads:
 (g) Judicial review
 Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia. As part of his answer the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Secretary or a decision is rendered under subsection (b) of this section which is adverse to an individual who was a party to the hearing before the Secretary, because of failure of the claimant or such individual to submit proof in conformity with any regulation prescribed under subsection (a) of this section, the court shall review only the question of conformity with such regulations and the validity of such regulations. The court may, on motion of the Secretary made for good cause shown before he files his answer, remand the case to the Secretary for further action by the Secretary, and it may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact or his decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based. Such additional or modified findings of fact and decision shall be reviewable only to the extent provided for review of the original findings of fact and decision. The judgment of the court shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions. Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Secretary or any vacancy in such office.
 
 
 [2]
 20 C.F.R. Sec. 404.1567(b) reads:
 (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.
 
 
 [3]
 Mrs. Jones contends that the Secretary failed to evaluate the side effects of her medications, which, she claims would cause her to miss two workdays per week. There is no basis in the medical evidence for such a claim. Dr. Ardaiz reported in April 1986 that Mrs. Jones had stopped taking Percodan "a couple of years ago" and that she only took the smallest strength" Librium capsules thereafter (Tr. 144). No medical source reported that the side effects of Mrs. Jones' medications would cause her to be absent from work two days per week. The ALJ properly discounted any claim of disability due to the effect of her medication
 
 
 [4]
 We have held that a statement by the ALJ that he does not find claimant's subjective symptoms of pain credible may not stand without some support, especially when there is evidence from the claimant's physicians that she suffers pain. Hammond v. Heckler, 765 F.2d 424 (4th Cir.1985)