**Rose ELSWICK, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

No. CIV. A. 2:99–0542.

United States District Court, S.D. West Virginia, Charleston Division.

Aug. 8, 2000.

Carter Zerbe, Charleston, WV, for plaintiff.

Rebecca Betts U.S. Attorney, Kelly Corry Asst. U.S. Attorney, Charleston, WV, for defendant.

### MEMORANDUM OPINION AND ORDER

HALLANAN, Senior District Judge.

Currently pending before the Court are Plaintiff's Objections to the Magistrate's Report and Recommendation ("R & R"). The Magistrate's recommends that Plaintiff's motion for judgment on the pleadings be denied; Defendant's motion for judgment on the pleadings be granted; and the Commissioner's final decision be affirmed. Having reviewed said Objections, as well as the entire administrative transcript, as well as relevant case law, the Court is now prepared to issue its ruling.

Plaintiff, Rose Elswick, filed concurrent applications for Supplemental Security Income ("SSI") and disability benefits on July 9, 1996, alleging a disability beginning April 22, 1996, due to depression and nerves. Claimant requested a hearing before the Administrative Law Judge ("ALJ"). By decision dated February 27, 1997, the ALJ concluded that Plaintiff was not under a "disability" as defined by the Social Security Act at any time through the decision date.

Plaintiff appealed the final administrative decision of the ALJ and the matter was referred to the Honorable Jerry D. Hogg, United States Magistrate Judge, who was designated to consider the pleadings and evidence herein and to submit to the Court his proposed findings of fact and recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). The Magistrate's recommendation is based upon the belief that the Commissioner's decision denying Plaintiff's petition for disability insurance benefits under Title II of the Social Security Act is supported by substantial evidence. This matter is now ripe for the Court's *de novo* review of the portions of the Magistrate's R & R to which objections are made.

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C. § 423(d)(5); *Blalock v. Richardson,* 483 F.2d 773, 774 (4th Cir.1972). Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months ...." 42 U.S.C. § 423(d)(1)(A). The burden of proving a disability within the meaning of 42 U.S.C. § 423(d)(1)(A) is on the claimant. Therefore, the claimant must demonstrate that:

> [H]is physical or mental impairment or impairments are of such severity that he is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); *McLain v. Schweiker*, 715 F.2d 866 (4th Cir.1983). The ALJ, in considering evidence of Plaintiff's disability, must conduct the sequential analysis required by 20 C.F.R. § 404.1520; *Hall v. Harris*, 658 F.2d 260 (4th Cir.1981). If the individual is found "not disabled" at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). That analysis requires the ALJ to determine:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether he has a severe impairment;

(3) if so, whether that impairment meets or equals the medical criteria of Appendix 1 to Subpart P of the Administrative Regulations No. 4, which warrants a finding of disability without considering vocational factors; and

(4) if not, whether the impairment prevents him from performing past relevant work.

(5) By satisfying either step 3 or 4, the claimant establishes a *prima facie* case of disability.

With inquiry five, the burden shifts to the Commissioner to determine whether the claimant is able to perform other work considering both his remaining physical and mental capacities (defined as residual functional capacity) and his vocational capabilities (age, education, and past work experience) to adjust to a new job. *Hall,* 658 F.2d at 264–65.

In the case at bar, the ALJ found Plaintiff's medical evidence establishes that she suffers from a depressive disorder, an impairment which is severe but which does not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 22) In addition, the ALJ opined that Plaintiff's statements concerning her impairment and its impact on her ability to work were not entirely credible. *Id.* Moreover, the ALJ determined that Plaintiff has the residual functional capacity to perform the requirements of work at all exertional levels, reduced by: a poor to no ability to deal with the public; a limited to seriously limited ability to understand, remember and carry out detailed job instructions; and the need for simple routine, repetitive and low stress work tasks. *Id.* Finally, the ALJ concluded that taking into consideration Plaintiff's age, educational background, relevant work history, and residual functional capacity, Plaintiff is able to make a successful vocational adjustment to work which exists in significant numbers in the national economy. (Tr. 23) Therefore, the ALJ determined that Plaintiff has not been under a disability as defined by the Social Security Act at any time through the date of his decision.

■ Plaintiff filed several Objections to the Magistrate's R & R. Plaintiff asserts that the ALJ improperly rejected Plaintiff's need to nap three hours per day based upon his own medical evidence and not the evidence contained in the record. In addition, Plaintiff contends that the ALJ did not ensure that the vocational expert knew all of Plaintiff's limitations regarding her deficiencies of concentration, persistence and pace in his questioning of said expert. Based upon the medical record, the hearing testimony, the R & R of the Magistrate Judge, and the Objections filed by Plaintiff, after a *de novo* review, the Court finds the ALJ and the Magistrate Judge erred by not taking into consideration the full scope of Plaintiff's disabilities. Therefore, the Court remands this case for further review.

Plaintiff is a thirty-six year old mother of four who has been diagnosed with depressive and anxiety related disorders.

Plaintiff states that her problems began around 1996 when she started experiencing nightmares that had apparently been brought on by flashbacks as a result of being a victim of child molestation when she was eleven years old. (Tr. 46) Although the medical record is rather limited, it does indicate that in August 1996, Plaintiff saw H. Hoback Clark, M.D. for treatment regarding her nightmares. Dr. Clark completed a Psychiatric Review Technique and diagnosed Plaintiff with an anxiety related disorder, more specifically, an adjustment disorder and depression. (Tr. 133, 136) Dr. Clark opined that although this diagnosis may be disabling it is not in and of itself severe. (Tr. 133)

A Psychiatric Review Technique was also performed by David Wilburn, Ph.D. and Timothy Freeman, Ph.D. Both doctors diagnosed Plaintiff with anxiety and affective related disorders, both of which are impairments, but not severe. (Tr. 143, 153) On August 14, 1996, John Koch, M.A., a licensed psychologist, evaluated Plaintiff. Plaintiff indicated to Mr. Koch that she cannot sit still or concentrate. (Tr. 166) She related that she has been taking Hydroxyzine, Lorazepam and Wellbutrin. *Id.* After completing an Adult Mental Profile, Mr. Koch noted that he did not observe any indications of anxiety, hostility, or depression. (Tr. 167) In addition, Mr. Koch did not observe serious problems with judgment, abstract thinking, memory or concentration. (Tr. 167, 169) Mr. Koch concluded by diagnosing Plaintiff with an adjustment disorder with depressed mood and prescribed her Prozac, Ativan and Vistaril. (Tr. 169, 173)

The record also includes an assessment of Plaintiff's ability to perform gainful employment conducted by Dr. Hutton on October 6, 1997. (Tr. 198) Dr. Hutton stated that Plaintiff suffered from a marked difficulty with stress and change. *Id.* Dr. Hutton continued by stating as Plaintiff's "anxiety level increases, her ability to learn new information, maintain attention, and make reliable safe decisions decreases."

*Id.* "This makes functioning in an ever changing work environment impossible." *Id.* According to Dr. Hutton, Plaintiff has moderate limitations in her ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances. (Tr. 199) Plaintiff had only moderate limitations in her ability to sustain an ordinary routine without special supervision; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from superiors; to get along with co-workers and peers without distracting them or exhibiting behavioral extremes; and to set realistic goals and to make decisions independently of others. (Tr. 200)

Dr. Hutton further opined that Plaintiff had marked limitations in her ability to carry out, understand and remember detailed instructions; to maintain attention and concentrate for extended periods; and to work in coordination with or proximity to others without being distracted by them. (Tr. 199–200) He noted that Plaintiff had marked limitations in her ability to complete a normal work day and work without interruptions from psychologically-based symptoms and difficulty in performing without a reasonable number of rest periods lasting a reasonable length of time; to respond appropriately to changes in the work setting; and to travel in unfamiliar places and use public transportation. (Tr. 200) In short, Dr. Hutton concluded that Plaintiff's "ability to carry out required job responsibilities, maintain a normal work day schedule, and be gainfully employed is not within her capabilities." (Tr. 198)

Dr. Hutton's opinion was based in part on Plaintiff's difficulty staying awake and concentrating throughout the day. During the administrative hearing Plaintiff testified that her daily medication which helps to alleviate her depression and anxiety related disorders also makes her sleepy. (Tr. 53–56) Plaintiff related to the ALJ (and it appears to be undisputed in the record) that her medication has helped her

disorders, however, the side effect of the medications is that they make her sleepy. (Tr. 53) In fact, Plaintiff testified that she "just feel[s] so tired . . . all the time." *Id.* She continued by stating that she feels continuously drained and that when she wakes up she feels like she could lay back down and go sleep. (Tr. 54) Plaintiff's attorney, Carter Zerbe, asked Plaintiff if she has to lay down everyday and she answered that she does for "about three hours . . . ." *Id.* Finally, Plaintiff related she simply has no energy. *Id.*

During the administrative hearing, the ALJ indicated that it was his understanding that Plaintiff's sleepiness during the afternoon was a reasonable side effect of mixing her medication. (Tr. 64) Gail Lehman, Ph. D, an independent medical examiner, agreed with the ALJ's conclusion, but also stated that it may not be the mixing of the medication that is causing her sleepiness, but the medication itself, regardless of whether it is mixed or taken separately. (Tr. 64, 68) Dr. Lehman further testified that many of Plaintiff's medications are sedatives. For example, Dr. Lehman opined that Prozac is a drug that can do one of two things. It can "rev you up or . . . slow you down and some people get sleepy on those drugs." (Tr. 68) In addition, Dr. Lehman testified that "Lorzzipam makes you sleep. It "[b]rings you down." *Id.* Dr. Lehman continued, "Vistaril is like an antihistamine so that brings you down." *Id.* Dr. Lehman concluded by stating that because of the heavy medication Plaintiff is taking she may have a "hangover in the morning in terms of feeling kind of sleepy and then kind of struggles through the morning, take[s] her Prozac after she eats, and . . . then by halfway through the afternoon feel[s] like she needs a nap." (Tr. 68, 69)

The ALJ inquired of Dr. Lehman whether there was anything Plaintiff could do to alleviate some of her sleepiness during the day. Dr. Lehman suggested that Plaintiff should talk to her nurse and tell her that she's sleepy during the middle of the day and asked whether there is anything that can be done. (Tr. 69) Dr. Lehman also related that Plaintiff might mention to her doctor about switching some of her medication to the evenings to avoid sleepiness during the day, but to be sure this would be effective, Dr. Lehman suggested that Plaintiff "check in with Dr. Hutton or the nurse." (Tr. 64)

In assessing whether Plaintiff was able to perform substantial gainful employment, Lisa Jenkins, a vocational expert testified at the administrative hearing. The vocational expert was presented several hypotheticals which were based upon disabilities the ALJ believed Plaintiff to be reasonably suffering from. Based upon the ALJ's hypotheticals the vocational expert testified that there were ample jobs locally and regionally that Plaintiff could perform. However, on cross examination, Mr. Zerbe asked the vocational expert whether a person who had to lay down or got sleepy during the day and had to take a nap for at least two hours or maybe less could perform any job that required an eight hour shift that the vocational expert previously testified Plaintiff could perform. (Tr. 82) The vocational expert answered that there was no job that Plaintiff could perform if based upon Plaintiff's symptoms she had to sleep or lay down for at least two hours during an eight hour shift. *Id.*

Plaintiff argues that Dr. Lehman's suggestion regarding altering her medication to make her less sleepy must be viewed with caution. The Court agrees. Dr. Lehman testified that changing the timing of Plaintiff's medication "might" or "could" help with daytime sleepiness. (Tr. 64, 69) Dr. Lehman has never personally examined Plaintiff, she has not prescribed medication to Plaintiff nor has she ever discussed with Plaintiff's treating physician Plaintiff's disorders and medication. Dr. Lehman's scope of knowledge regarding this matter is confined within the limited medical record and Plaintiff's testimony. It is one thing for a medical opinion to conclude that changing Plaintiff's medication *would* reduce her sleepiness during

the day, but that is not the case here. There is no conclusive evidence to support a finding that altering the manner in which Plaintiff takes her medication would decrease her sleepiness.

The Court finds this to be the death knell of the ALJ's and Magistrate's decision. There is no dispute that Plaintiff suffers from depression and anxiety related disorders. As a result, Plaintiff has been prescribed a myriad of medications, most of which are sedatives. Second, there is no dispute in the record that Plaintiff's medication has helped her. There is ample evidence to suggests that Plaintiff has continued to improve as a result of her medications and there is no testimony that she should discontinue such use. However, if the medication that Plaintiff takes makes her continuously sleepy requiring her to nap two to three hours during the day according to her undisputed testimony, then it is clear that Plaintiff would not be able to maintain a regular full-time job. This was made clear by the testimony of the vocational expert, Ms. Jenkins.

The ALJ simply dismisses this relevant fact. After having heard the testimony of Dr. Lehman, the ALJ concludes that the sleepiness Plaintiff suffers from as a result of her medication can be done away with by changing the daily doses to different intervals throughout the day. (Tr. 19) The ALJ's opinion is based solely on Dr. Lehman's personal opinion who was not Plaintiff's treating physician, nor could Dr. Lehman be sure that changing Plaintiff's medication would in fact decrease Plaintiff's sleepiness. The ALJ noted that Dr. Lehman suggested that Plaintiff needed to discuss this with her doctor. Plaintiff however, did not have an opportunity to do so before the ALJ rendered his decision. Therefore, the Court finds the medical record to be incomplete and must be remanded for further development.

The Court further finds the ALJ erred in not fully informated the vocational expert of Plaintiff's disabling limitations. It is well founded that a vocational expert's testimony must be in response to proper hypothetical questions that includes all limitations Plaintiff suffers from. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir.1989). After a thorough review of the record, the Court agrees with Plaintiff and finds that the ALJ failed to ensure "that the vocational expert knew what the [Plaintiff's] abilities and limitations were." *Walker*, 889 F.2d at 50. The ALJ found that Plaintiff "often has deficiencies of concentration, persistence, and pace." (Tr. 20) However, this finding was never presented to the vocational expert. Had it been, the vocational expert's opinion may have been different.

In fact, on cross examination Mr. Zerbe posed a hypothetical question to the vocational expert that asked her to consider whether a person who often suffered from deficiencies of concentration, persistence and pace resulting in a failure to complete tasks in a timely manner would eliminate the jobs previously mentioned that Plaintiff could perform. (Tr. 83) The vocational expert testified that there would be jobs Plaintiff could perform if the term "often" meant a moderate limitation not being work precluding in and of itself. *Id.* However, when asked by Mr. Zerbe to consider the term "often" to mean work precluding up to one-third of the day, the vocational expert testified that there were no jobs Plaintiff could perform. *Id.* As pointed out by Plaintiff, there appears to be some discrepancy as to the meaning of the term "often" that was not made clear by the ALJ. The fact that the vocational expert had been "instructed by various judges" throughout her career as to the meaning of the term "often" does not assist the Court as to how the ALJ at the administrative hearing defined the term "often" as he did not state it on the record or in his decision. Therefore, the ALJ failed to ensure that the vocational expert understood the degree of Plaintiff's limitations in concentration, persistence and pace which requires the Court to remand this matter for further information.

Accordingly, after a *de novo* review and for the reasons set forth herein, it is here-

by **ORDERED** that the Magistrate's Recommendation be **DENIED,** Plaintiff's motion for judgment on the Pleadings be **GRANTED,** Defendant's motion for judgment on the pleadings be **DENIED** and the Commissioner's final decision be **REVERSED** and the matter be **REMANDED** to the Commissioner for further consideration in accordance with this Order.

Specifically, the Court hereby **ORDERS** Plaintiff to consult with her treating physician in regards to whether altering her medications would reduce or eliminate her sleepiness. In addition, the Court finds the testimony of the vocational expert to be irrelevant to Plaintiff's claim because it did not incorporate the fact that Plaintiff often suffers from deficiencies in concentration, persistence and pace nor did the ALJ define the term "often". Therefore, the Court further **ORDERS** the ALJ to include in a hypothetical his finding that Plaintiff suffers from deficiencies in concentration, persistence and pace along with the definition of the term "often" as well as any further medical records supplied by Plaintiff's treating physician regarding the altering of her medication.

The Clerk is directed to send a certified copy of this Order to all counsel of record.