Stanley v. SSA                    CV-00-577-JD   07/31/01

UNITED STATES DISTRICT COURT FOR THE
                    DISTRICT OF NEW HAMPSHIRE


Cindy L. Stanley

     v.                                Civil No. 00-577-JD
                                       Opinion No. 2001 DNH 136
Larry G. Massanari,
Acting Commissioner
of Social Security


                         O R D E R


     The plaintiff, Cindy L. Stanley, brings this action pursuant

to 42 U.S.C.A. § 405(g) seeking judicial review of the decision

by the Acting Commissioner of the Social Security Administration

denying her application for social security benefits.  Stanley,

who alleges a disability due to problems with her back and

depression, contends that the Administrative Law Judge ("ALJ")

failed to properly assess her subjective complaints of pain,

erred in failing to include her mental limitations and other

restrictions in the hypothetical question posed to the vocational

expert at the hearing, and erred in concluding that she was

capable of doing full-time work.  The Acting Commissioner moves

to affirm the decision.

## Standard of Review

The court must uphold a final decision of the Commissioner denying benefits unless the decision is based on legal or factual error.  See Manso-Pizarro v. Sec'y of Health and Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (citing Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).  The court's "review is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence."  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).  The Commissioner's factual findings are conclusive if based on substantial evidence in the record.  See 42 U.S.C.A. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation omitted).

## Background

Cindy L. Stanley filed her application for social security benefits in August of 1997, alleging a disability since June 30, 1996, due to problems with her back.  She later alleged depression as an additional impairment.  Stanley was thirty-two years old when she applied for benefits and had an eleventh-grade education.  She had past relevant work as a nursing assistant, a

fast food worker, and an assembler.

A. Back Injuries and Pain

Stanley was treated for back injuries and pain, beginning in 1987. By March of 1996, Stanley was only working four hours a day. Her treating orthopedic surgeon, Dr. Hoke Shirley ordered an MRI scan that indicated a disc bulge at L4-5 without herniation, impairment of neural elements, or evidence of spinal stenosis. On Dr. Shirley's recommendation, Stanley continued part-time light-duty work until July of 1996, when Dr. Shirley indicated that she was unable to work at all.

Between July and October of 1996, Stanley also received physical therapy at Concord Hospital. By the end of September of 1996, the physical therapist told her she was able to return to part-time work. She was told to wear a sacroilic belt and to use a corset and a cane as needed.

Stanley was examined by Dr. John Richey on August 1, 1996. Dr. Richey found a good range of motion in her neck and arms and normal reflexes and gait. Based on straight leg raising tests, Dr. Richey thought Stanley showed symptoms of radicular pain on the right, despite the unremarkable MRI, and he treated her with an epidural injection of Depo-Medrol. The injection was repeated on September 18, 1996. On September 30, while Stanley reported no change in her condition, Dr. Richey found that she was able to

3

walk fairly well without her cane, with no obvious limp and with normal flexion, although she remained depressed. A right sacroiliac joint injection and a right L5-S1 facet injection on October 3, 1996, provided almost complete relief from pain. Stanley continued to take Flexeril and Ultram as needed for pain.

Dr. Shirley noted in his records on November 22, 1996, that Shirley started working at Burger King. She told him that the job might not work out because she was required to lift fifty pounds on a regular basis. Dr. Shirley recommended vocational counseling to help her find more suitable work and limited her to working part time.

Stanley reported radiating pain in her right lower back during an appointment with Dr. Richey on January 22, 1997. Dr. Richey diagnosed a recurrence of right sacroiliac joint pain and arranged for a right sacroiliac joint injection. The injection was done on January 24, 1997, and Stanley reported a decrease in her level of pain.

Stanley apparently moved to North Carolina during the spring or summer of 1997. On September 8, 1997, Stanley was evaluated by Dr. Frank Woriax for North Carolina Disability Determination Services. A funduscopic examination showed flat discs with no hemorrhage or exudate. Dr. Woriax noted that Stanley used a cane for balance and that she had tinel, a tingling sensation, on her

4

right side. Her neurological examination and her gait were both normal. He diagnosed chronic back pain.

On October 2, 1997, a state medical consultant completed a residual functional capacity assessment form based on Stanley's records. The doctor found that Stanley could lift fifty pounds occasionally and twenty-five pounds frequently and that she could stand, walk, and sit for about six hours in an eight hour day. He found that she had limited push/pull capacity in her legs.

On June 22, 1998, Stanley began treating with Dr. Debora Tallio in Lumberton, North Carolina. Stanley complained of pain in her right lower back, buttocks, and thigh that ranged from a level of four to nine and increased with activity. Dr. Tallio noted that Stanley showed no acute distress and had exaggerated pain responses to any movement including light palpation during examination of her back. The pain response increased with forward flexion and right lateral bending.

Dr. Tallio concluded that Stanley had chronic pain and that it might be impossible to determine the source although her history and examination were suspicious for chronic right L5 radiculitis. Dr. Tallio referred Stanley for a right L5-S1 facet injection on July 10, 1998, which reduced her pain by four or five levels for one to two weeks. Dr. Tallio noted that although Stanley's physical therapist reported Stanley was making

5

progress, Stanley would not admit it.

B.    Depression

By May of 1996, Dr. Hoke Shirley's medical notes indicate that Stanley was taking the medications Zoloft and Klonopin to help manage depression. On August 16, 1996, Stanley was seen by Dr. Peter Kelly, a psychologist, who diagnosed dysthymia, borderline personality disorder, neck and lower back injury, chronic pain and financial distress, and a global assessment of functioning level ("GAF") of forty. A GAF level of forty indicates some impairment in reality testing or communication or a major impairment in several areas such as work or school, family relations, judgment, thinking, or mood. Stanley treated with Dr. Kelly for five sessions and then discontinued therapy.

A Disability Determination Service psychological consultant completed a Psychiatric Review Technique form on October 1, 1997. On the form, the consultant indicated that Stanley suffered from an affective disorder characterized by depression secondary to pain. He said that the disorder caused a slight limitation in her daily living activities and in maintaining social functioning and that the disorder often caused deficiencies of concentration, persistence, or pace, resulting in her failure to complete tasks in a timely manner. The consultant also completed a Mental

Functional Capacity Assessment in which he stated that Stanley was moderately limited in her ability to maintain attention and concentration, perform activities within a schedule, and complete a normal workday and work week due to lack of motivation and lack of energy during times of depression. He further stated that Stanley was able to handle household chores and that she would be able to perform simple repetitive tasks in a non-production oriented workplace. On January 21, 1998, another disability determination service psychological consultant completed a Psychiatric Review Technique form in which he indicated that he found no current evidence of a mental impairment.

Stanley was evaluated by Dr. Eugene Lawlor, a psychiatrist, on Feburary 12, 1998, who diagnosed dysthymia, past history of substance abuse, bipolar features, and mixed passive dependent and passive aggressive, noting that he must rule out borderline personality disorder. Dr. Lawlor prescribed an antidepressant medication. He saw Stanley again on March 24, 1998, when she reported no difference and he added medication for the treatment of manic episodes associated with bipolar disorder. On April 21, 1998, Stanley continued to report no difference and appeared to be somewhat depressed. Dr. Lawlor discontinued the medication for bipolar disorder and prescribed Lithium. By September 14, 1998, Dr. Lawlor reported that Stanley appeared to be stable,

7

that her affect was better, and that she appeared to be in control.

C.  Hearing

Stanley appeared and was represented by counsel at the hearing before the ALJ held in Lumberton, North Carolina, on December 10, 1998.  Stanley testified about her educational level and her ability to read, her past work, and her daily activities. She said that she could take care of her own personal needs and that she could cook, wash dishes, do laundry, and clean although she had to work slowly and take frequent breaks.  She also said that she could drive and go grocery shopping with her husband pushing the cart.

Stanley described her pain as a constant sharp pain in her back that sometimes extended down her right leg, typically at a level of seven on a ten point scale.  She said that the pain caused difficulty in sleeping, that she could sit, stand, or walk for only ten to fifteen minutes at a time, that she was unable to bend, squat, or lift more than ten pounds on a regular basis. She testified that she was taking Flexeril, Norpam, Baclofen, and eight Tylenol a day.  She also said that she had used a cane since 1995.

8

She described her depression as causing her to cry a lot and to have outbursts of rage at her husband. She said that she had trouble following television programs and remembering what she had read. She testified that she took Nortriptyline and Lithotabs.

A vocational expert also testified at the hearing. Assuming a residual functional capacity for light and sedentary work not involving climbing, repetitive bending, stooping, or twisting of the upper body, with simple instructions and a sit/stand option, the vocational expert testified that there were jobs in the national and local economies that Stanley could do. If other restrictions and limitations were added to allow her to lie down for thirty minutes twice a day, the vocational expert testified that the identified positions would not be appropriate if the rests were for more than a few moments and could not be done during regular work-shift breaks. If a GAF level of forty were included in the description, the vocational expert testified that the identified jobs would be inappropriate.

D. Decision

The ALJ issued his decision on March 5, 1999. He found that Stanley last engaged in substantial gainful activity on December 31, 1996, and that her back problems and depression were severe

9

impairments.  He found that despite being severe, the impairments did not meet or equal a listed impairment.  The ALJ also found that Stanley could not return to any of her past relevant work.  On the Psychiatric Review Technique Form, which is appended to his decision, the ALJ found that Stanley had affective disorders due to situational depression which would often cause deficiencies of concentration, persistence, or pace resulting in her failure to complete tasks in a timely manner.  Based on the vocational expert's testimony and his own assessment of Stanley's credibility, however, the ALJ determined that Stanley was not disabled.

E.  Additional Evidence

After the ALJ rejected her application, Stanley appealed to the Appeals Council and submitted additional evidence that had not been submitted to the ALJ.  The First Circuit has recently held that the ALJ's decision is to be reviewed based only on the evidence presented to the ALJ.  See Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001).  Since Stanley seeks review of the ALJ's decision, not the decision of the Appeals Council, the additional evidence will not be considered here.  See id.

Discussion

10

Stanley challenges the ALJ's determination that she is not disabled. She argues that the ALJ improperly failed to fully credit her subjective complaints of back pain, failed to consider the effect of her GAF score, failed to include in the hypothetical to the vocational expert certain exertional and nonexertional limitations including that due to her depression she would often experience deficiencies in concentration, persistence, and pace, and erred in concluding that her residual functional capacity permitted her to perform full-time work. Because the ALJ's failure to include Stanley's mental limitation in his hypothetical to the vocational expert requires that the case be remanded, it is not necessary to review the other issues raised for review.

Stanley's application was denied at step five of the sequential evaluation process set forth in 20 C.F.R. § 404.1520.[1]

---

[1] The ALJ is required to make the following five inquiries when determining if a claimant is disabled:

(1) whether the claimant is engaged in substantial gainful activity;
(2) whether the claimant has a severe impairment;
(3) whether the impairment meets or equals a listed impairment;
(4) whether the impairment prevents the claimant from performing past relevant work; and
(5) whether the impairment prevents the claimant from doing any other work.

11

At the fifth step, the Commissioner has the burden to show that despite the claimant's severe impairment, she retained the residual functional capacity to do work other than her prior work during the covered period and that work the claimant can do exists in significant numbers in the relevant economies. See Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991). The Commissioner can satisfy the burden of proof at the fifth step by relying on the opinion of a vocational expert given in response to a hypothetical question that encompasses the claimant's functional limitations. See Rose v. Shalala, 34 F.3d 13, 19 (1st Cir. 1994); Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982).

In Stanley's case, the ALJ did not include in the hypothetical to the vocational expert the limitation, which the ALJ found, that Stanley's depression would often cause her to have deficiencies in concentration, persistence, and pace resulting in her failure to complete tasks in a timely manner. Instead, the hypothetical posed to the vocational expert included a limitation that Stanley would need a job that had simple instructions. When Stanley's counsel asked the vocational expert what effect Stanley's GAF level of 40 would have on available

_____

See 20 C.F.R. § 404.1520.

12

jobs, the expert answered that none of the jobs he had found would be appropriate with a GAF level of 40.

This court and other courts have determined that when an ALJ has found on a Psychiatric Technique Review Form that a claimant "often" has deficiencies of concentration, persistence, or pace, the hypothetical posed to the vocational expert must adequately describe that limitation in order for the opinion to constitute substantial evidence. See, e.g., Weaver v. Massanari, 2001 DNH 088, Civ. No. 00-347-JD (D.N.H. May 10, 2001); Brachtel v. Apfel, 132 F.3d 417, 421 (8th Cir. 1997); Green v. Comm'r of Soc. Sec., 2001 WL 364921, at *5 (E.D. La. Apr. 10, 2001); Elswick v. Apfel, 109 F. Supp. 2d 476, 481 (S.D. W.Va. 2000); Maciejewski v. Apfel, 2000 WL 1788437, at *9 (N.D. Ill. Dec. 5, 2000). In this case, the limitation included in the hypothetical, that Stanley would need a job with simple instructions, did not adequately describe that she would often have deficiencies in concentration, persistence, or pace resulting in her failure to complete tasks in a timely manner. Cf. Hollins v. Apfel, 2001 WL 322629, at *5-6 (S.D. Ohio Mar. 12, 2001) (finding extensive description of limitation adequate).

Since the hypothetical to the vocational expert in this case did not include the concentration limitation found by the ALJ, the vocational expert's opinion as to available jobs that

13

Stanley could perform is not substantial evidence. Therefore, the Commissioner has not carried his burden of showing that his decision is based on substantial evidence in the record. The decision of the Commissioner is reversed, and the case is remanded for further proceedings that are not inconsistent with this opinion.

## Conclusion

For the foregoing reasons, the claimant's motion to reverse (document no. 7) is granted to the extent that the Commissioner's decision is reversed and the case is remanded for further administrative proceedings. The Commissioner's motion to affirm (document no. 8) is denied.

Since this is a "sentence four" remand, the clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

July 31, 2001

cc:  Raymond J. Kelly, Esquire
     David L. Broderick, Esquire

14